THE MAYOR AND CITY COUNCIL OF BALTIMORE, A Municipal Corporation, and THE COMMISSIONERS FOR OPENING STREETS IN BALTIMORE CITY

*vs.*

CHARLES CARROLL, ROYAL PHELPS CARROLL, PHILIP A. CARROLL and HELEN C. ROBBINS et al.

*Prayer taking case from jury: sufficiency of evidence; duty of court. Condemnation of land: under stream; damages; question of navigability; market value. Evidence: improperly excluded; when no error.*
*Order of business.*

A prayer seeking to take a case away from the jury for the want of legally sufficient evidence should not be granted if there is any evidence, however slight, tending to prove facts to support the declaration.                                         pp. 71-72

The weight and value of such evidence must be left to the consideration of the jury.                                         p. 72

In an appeal from the award of damages to the owners of the bed of a stream, for the enclosing of the stream in a sewer on top of which a city driveway was constructed, evidence that piers or piles upon which the owners of the soil under the stream might have erected buildings, might have been swept away, is not sufficient to prove that such bed of the stream was of no value to such owners.                                         p. 72

The mere fact that the ebb of the tide in such stream flowed over the soil in its bed does not make such a stream navigable, or affect the soil under the stream with a public use, so as to justify nominal damages only, upon the taking of the stream and the soil under it for the construction of a city sewer and driveway, especially as a municipal pier lower down the stream had destroyed any possible navigability of the stream.        p. 73

In condemnation proceedings, the market value of the land is to be estimated with reference to the uses and purposes to which it is adapted, and any features (including its possible value for railroad track purposes) which might enhance its marketability may properly be considered.                p. 73

A witness shown to be an expert may properly give his opinion on a subject with which he has such knowledge, provided the subject of inquiry be one about which the jury could not be supposed to be conversant.                p. 75

The order of proof is largely in the discretion of the trial court, and, in general, from rulings thereon appeals do not lie.

                        p. 75

*Decided March 6th, 1916.*

Appeal from the Baltimore City Court.    (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George Arnold Frick, Assistant City Solicitor,* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellants.

*R. E. Lee Marshall, F. J. Kintner* and *John Philip Hill* (with whom were *Thomas Hughes, Frank E. Welsh, Jr.,* and *John G. Schlipp* on the brief), for the appellees.

CONSTABLE, J., delivered the opinion of the Court.

The Commissioners for Opening Streets in Baltimore City awarded nominal damages to the appellees in the condemnation proceedings instituted to acquire property of the appellees for the street known as The Fallsway. The appellees being dissatisfied with the award appealed, and upon trial before a jury in the Baltimore City Court were awarded four thousand, one hundred and thirty-three dollars and seventy cents damages, and, the City having appealed to this Court, we are called upon to review the rulings of the Court below.

The only issue presented below was as to the value of the land taken by the appellant, the title, for the purposes of the case, being conceded to be in the appellees, subject to a right of drainage by the City.

The land in controversy comprises the eastern half of the bed of Jones' Falls, extending from the north side of Baltimore street to the south side of Low street, excluding the beds of Fayette and Lexington streets, and having a total area of 27,558 square feet. The witnesses considered this tract as making five lots; one fronting on Baltimore street, one on each side of Fayette street and one on each side of Lexington street.

The first contention of the appellant to be considered is that arising from the refusal of the Court to instruct the jury that there was no sufficient evidence upon which they could find any inquisition for more than nominal damages, and it will therefore be necessary to examine the testimony to determine whether or not there was any foundation for the claim that the Court should have declared as a matter of law that there was no evidence, legally sufficient, from which the jury could find more than nominal damages.

Jones' Falls is a stream entering the City from the north and flows through its center in a general southeasterly direc-

tion, until it finally empties into the harbor.    For a long time it had been used throughout its length as an open sewer for the City's sewage.    In carrying out the vast improvements in the City it was determined to take care of this stream, with its polluted waters and sewage, by enclosing it in closed concrete sewers, and utilizing a portion of its length by raising the bed of the stream by filling to the level of the adjacent properties, and thus making the boulevard called The Fallsway.    The width of the falls at the lots in question was about eighty feet, and forty feet was the average width of each of the five lots of the appellees.    The tide ebbed and flowed over this area; the limit of the tide was Gay street, just north of Low street.    During dry seasons the water was but a few inches in depth, but the mean high water was about two feet.    And at times the water was very high from freshets.    The bed of the stream was fifteen feet below the level of adjoining properties or the street level.    And on each side were stone retaining walls, built on land belonging to the City.

The testimony as to the value of the lots was very conflicting.    The witnesses for the appellant claiming they had no value, on the theory that the expense to be incurred, before they could be put to any utility, was so greatly above the price at which lots in the neighborhood could be purchased, that there was not, and would not be, any market for them. In other words, their argument was, since a purchaser would acquire them with the duty of taking care of the burden upon them of the flowage before they could be utilized, that the cost of providing for that sewerage would more than equal the market price they would command afterwards.    There were several witnesses to this, and while their testimony was strong and to some extent convincing, yet it was not for the Court to say that the jury should be bound by it rather than that produced by the witnesses for the appellees to the contrary. The weight of the evidence was for the jury and not for the Court.    As we have so often said: "A prayer seeking to take a case from the jury (as this prayer virtually does) for a

want of legally sufficient evidence, will not be granted if there is any evidence, however slight, legally sufficient as tending to prove it, that is to say, competent, pertinent and coming from a legal source—but the weight and value of such evidence will be left to the jury." *Hodges* v. *Balto. Engine Co.,* 126 Md. 307.

There were testifying for the appellees, two real estate experts, two builders and a consulting engineer, all more or less familiar with Jones' Falls from a scientific standpoint. Their testimony when considered as a whole furnished evidence from which the jury could have found that the lots had more than a nominal value. The mere fact that it was possible that any piers or piles erected to support small buildings might be washed away by freshets, and the buildings thereby damaged, was not sufficient to say that because this *might* happen, that therefore the land had no value at all. And it was positively testified by these men, as experts, that the properties could be utilized in this manner, and at the same time showing how they would provide for the cost in building the supports for the structures, yet keeping the cost far below what the lots then would be worth, and not interfere with the flow of the stream. It was also testified that the bed of the stream had a market availability for railroad purposes. The jury allowed damages very much below the minimum valuation placed upon the lots; and we think there was no error committed, under the facts, in leaving the question to it to determine.

The first, second, second A, third and fourth B of the appllant's prayers were granted and its second B and fourth were refused. The second B, asked the Court to instruct the jury that since the tide ebbed and flowed in Jones' Falls, the public had a right of navigation over it and the owners of the bed had no right to erect any structure thereon that would interfere therewith. The testimony in the record from the appellant's own witnesses shows conclusively that this stream was not navigable, not only from the fact that usually it was but a few inches in depth and an average of but two feet

deep, but that, before these concrete tubes had completely destroyed whatever navigability it ever had, the Municipal Pier had practically done so.  The Court was correct in refusing this prayer.  *Commonwealth* v. *King,* 5 L. R. A. 536.

The fourth prayer asked to have the jury instructed to disregard all the evidence as to the value of the property for railroad purposes.  Since the decision in *Brack* v. *Balto. City,* 125 Md. 378, it is not necessary to consider this proposition at any length in this State, for JUDGE URNER has carefully considered and analyzed, not only the leading cases in this State, but many in other jurisdictions and has announced as a conclusion that: "The rule is that the market value of the land is to be estimated with reference to the uses and purposes to which it is adapted, and that any features which may enhance its marketability may properly be considered."

The only objection raised to the appellees' only prayer is for the omission from consideration of the right of navigation.  What we have said above disposes of this objection.

A large part of the brief of the appellant is given over to dealing with how the appellees' witnesses arrived at their valuations.  It is sufficient to say that the prayers granted for the appellant, as well as the one for the appellee, clearly and thoroughly stated the method by which the jury should arrive at a proper valuation, and the appellant could not have suffered through any misunderstanding as to this.

The first exception to the testimony was over the admission of Ordinance No. 139 of the Mayor and City Council, approved July 3, 1912, which repealed an ordinance (No. 133, approved June 11, 1890), which had previously given authority to the Western Maryland Tidewater R. R. Co. to build its road over the land of the appellees.  The ordinance granting the authority had already been admitted without objection, and we do not see what injury could have been done the appellant, even though it should be considered irrelevant.  The second exception is to a question to one of the real estate experts as to the market value of the lots as they

74    M. & C. C. OF BALTO. vs. CARROLL.

Opinion of the Court.    [128

existed prior to the imposition of the sewage tubes and "subject, however, at that time to the right of sewerage flowage in the City." It is claimed that it should have expressed the burden "as the necessity of carrying Jones' Falls as it was at that time." We think the question as framed was broad enough to have included the objection. Sewerage flowage certainly was understood to have included everything that came down the stream—surface waters sewers, which in times of high water, made up the bulk of the stream. The ruling on the third exception was proper because the witness had not qualified as an expert engineer. The fourth exception was intended to be to a remark made by the Court, and, while it is not clear that the exception was properly taken, we do not think the remark was so serious as to amount to reversible error. The ruling on the fifth exception was correct, for the witness was an expert and could properly give his opinion on a subject with which he had experience and the jury could not be supposed to know anything about; and it had a practical bearing upon the only issue. The sixth and seventh exceptions are covered by the decision in *Brack* v. *Balto. City, supra.* It was conceded at the argument that the questions the subject of the eighth and ninth exceptions were without force. In these exceptions a real estate expert of the City was asked on cross-examination if he had not been prepared to testify in another trial that these lots in controversy had a large value, if available as dry lots, and had answered that he was so prepared and was now so prepared, and continued to give the valuations based on the hypothesis that they were dry land. He stated that his figures were based on the figures in his report made to the City Engineer. In the tenth exception the appellant sought to introduce the report. The appellee offered to allow the witness to use the report to refresh his recollection, but objected to having the report admitted in evidence. We think the Court was correct in excluding it, and we do not see upon which principle it was admissible. There was no question raised as to the valuations being correct on the basis on

which they were made, and to produce the figures upon which they were founded was totally irrelevant. The eleventh exception was for refusing to allow a witness to say whether or not these lots had ever been listed for taxation. That this method of proving values is practically universally held to be improper, see 16 *Cyc.* 1135 and cases cited in notes. The question, the subject of the twelfth exception, should have been permitted to be answered, but we hold the refusal not to be reversible error, for the reason that the same witness later in his testimony substantially answered the same question. *Colmary* v. *Crown, Cork & Seal Co.,* 124 Md. 476. The thirteenth and fourteenth exceptions were to the qualifications of a witness to testify as an expert, and also that it was not proper rebuttal testimony. As to the first objection we think the witness was qualified to testify to the matters as an expert, and as to the second, that the order of the proof is largely in the discretion of the trial judge and from his ruling thereon no appeal will lie. *Balto. Ches. & Atl. Ry. Co.* v. *Moon,* 118 Md. 380. The fifteenth is not pressed.

Finding no reversible error, we will affirm the rulings.

*Rulings affirmed with costs to the appellees.*