SILVER SPRING MEMORIAL POST NO. 2562,
VETERANS OF FOREIGN WARS *v.*
MONTGOMERY COUNTY

[No. 122, October Term, 1954.]

*Decided June 22, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William R. Richards* and *Alger Y. Barbee,* for appellant.

*John W. Neuman, Assistant County Attorney for Montgomery County,* with whom were *Charles M. Irelan, County Attorney,* and *Alfred H. Carter, Assistant County Attorney,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

Silver Spring Memorial Post No. 2562 Veterans of Foreign Wars (sometimes referred to below as the "V.F.W. Post" or the "Post") appeals from a final decree of the Circuit Court for Montgomery County dismissing its amended bill of complaint by which the Post sought declaratory relief against Montgomery County, Mary-

land (sometimes referred to as the "County") from a front foot assessment for street paving levied against the Posts's property. The grounds upon which the invalidity of the assessment is asserted are, in brief, (1) that the Post's land is "acreage" property, not lots in a subdivision, (2) that any benefit to its land could be realized only through a change of use of the land by its development as suburban lots, which possible use, it claims, is remote and speculative, and (3) that the front foot rule operates unfairly where one abutting owner (the Post) possesses as much frontage as all of the others combined. Although the terms of the amended bill are sufficient to present another objection to the assessment—that the purpose of the street improvement was to benefit the public generally through greatly improved access to a new County school located at the end of the improved street, rather than to benefit the abutting landowners— this objection does not appear to have been pressed in the trial court and is not referred to in the opinion of the Chancellor. Likewise, it is not pressed in the appellant's brief in this Court, though it was discussed somewhat in oral argument.

In 1948 the V.F.W. Post bought a tract of somewhat more than six acres of land at McKenney Hills between Churchill Road on the north and what is now known as Hayden Drive on the south. It was and is improved by a large, frame dwelling house, a carriage house and two smaller buildings, and is used as a Post home for the organization and for its various social functions. In August, 1949, the Board of Education of Montgomery County purchased a tract of about ten acres of land, a part of which lies at the westerly end of Hayden Drive at its intersection with Rosensteel Avenue. The exact status of the latter street is not clear, but it seems that Rosensteel Avenue is either a street which exists only on paper or an unimproved and unusable road. At or shortly after the time when the County Board of Education bought the ten-acre tract the vendors of that tract proceeded to dedicate Hayden Drive as a public

street from a line at or near its junction with Gardiner Avenue to the land purchased by the Board of Education. The Post's property has a frontage of about 715 feet on the north side of Hayden Drive and two other lots on the north side between the Post's property and Gardiner Avenue have a combined front footage (as assessed) of about 85 feet. Other property formerly owned by the vendors of the school tract which lies along the south side of Hayden Drive has been subdivided into 12 lots having a combined front footage of about 732 feet. These lots appear to have been sold after the sale of the school property.

In February, 1950, the Board of Education awarded a contract for the construction of the McKenney Hills Elementary School. It was built in about six and a half months and was opened in September, 1950. Hayden Drive had been considerably damaged by heavy hauling and by excavation work occasioned by the building of the school; but Hayden Drive, together with a part of the Post's property afforded the only way of getting to and from the school.

On January 29, 1952, the County Council of Montgomery County adopted a resolution, of which it duly notified the V.F.W. Post and other owners of property abutting on Hayden Drive, which provided for the grading and paving of that street between Gardiner Avenue and Rosensteel Avenue and for assessing the cost thereof against the abutting property, as provided by the Road Construction Code of Montgomery County. A hearing on the matter was scheduled for and held on February 26, 1952, at which the Post was represented and objected to the proposed assessment. On April 29, 1952, the Council adopted a further Resolution to go ahead with the project, and on July 16, 1952, let a contract for the work.

The original bill in this case was filed on August 15, 1952, against both the County Council and the Board of Education of Montgomery County. A demurrer interposed by the Board of Education was sustained. There-

after the bill was amended so as to be directed only against the County Council, and a demurrer filed by the County to the amended bill was overruled on June 8, 1953.

The work was carried through to completion, and on February 2, 1954, the County Council adopted an ordinance which established the total cost of the project at $20,785.20. (This was made up of three items: advertising, $45.12; contract, $18,854.63; and engineering, $1,885.45.) From the above aggregate cost, the sum of $3,981.29 was deducted, which amount was described in the ordinance simply as "Paid by Montgomery County." The balance of $16,803.91 was assessed against the abutting properties, and the respective owners thereof, as a special assessment based upon a linear footage or front foot basis. $7,916.49 of the total was assessed against the V.F.W. Post; the balance, $8,887.42 was assessed against other property owners. The basis upon which the figure of $3,981.29 "Paid by Montgomery County" was arrived at is not shown.

Hayden Drive as constructed ends with an apron or turn in front of the school. The County manager was called as a witness and was questioned both at the taking of a pre-trial deposition (which was put in evidence) and at a hearing before an Examiner with regard to the reason for the paving. He claimed that "I could not say that the construciton was for the sole purpose of the school. I think I stated that the construction was inevitable in view of the fact that houses were under construction and some may have been completed at the time work was begun on the Project." He also testified, however, that the requests which led to setting the project down for a public hearing came from the Board of Education and groups whose "primary interest" was in the benefit to be derived through ingress and egress to and from the school. It appears, in spite of the vagueness of the County Manager's recollection on the point, that no request for the paving of Hayden Drive came from any owner of property fronting on that road.

The law is firmly established in Maryland that in order to justify a special assessment for a local improvement such as the paving of a street, there must be both a public purpose and a special benefit to the properties to be assessed over and above that accruing to the public. *Baltimore v. Moore*, 6 H. & J. (Md.) 375; *Alexander v. Baltimore*, 5 Gill 383; *Burns v. Baltimore*, 48 Md. 198; *Leser v. Wagner*, 120 Md. 671, 87 A. 1040, affd. 239 U. S. 207. The difficulty of balancing the necessary public interest and the required special benefits to particular properties has often led to imposing a part of the cost on the community at large through general taxation and a part on properties specially benefited. The Road Construction Code of Montgomery County (Section 154-12 of the Montgomery County Code of 1950) undertakes to deal with the problem by providing for different bases for allocating costs in whole or in part against abutting properties on the one hand and general tax funds on the other. The front foot basis of allocating costs as between abutting property owners is provided for by the Road Construction Code and by the particular ordinance of the County Council here involved. The appellant has raised no contention suggesting non-compliance with the provisions of the Road Construction Code. Section 65-19 of the Montgomery County Code of 1950 requires that the cost of construction of any road built in the County "shall be assessed as a benefit to all property abutting the road" provided that (a) such cost shall be assessed only to the extent provided for by the Road Construction Code, (b) "No such property shall be assessed in excess of the amount by which such property is specially benefited by such construction" and (c) property of the United States or of the State of Maryland, or any governmental agency thereof, is exempt.

The testimony is sufficient to support the County's contention that the assessment against the property owned by the Post does not exceed the enhancement in its value due to the paving, if the land is used for suburban development purposes, which is, in the words of the Chan-

cellor, "its most valuable monetary use." The area is clearly suburban.

The Post's principal contentions are that its property is still "acreage" and that the asserted enhancement in value could be realized only through abandoning the Post's present use of the acreage and converting it into a suburban subdivision. We agree with the Chancellor that these facts are not sufficient to invalidate the assessment. *Consolidated Gas Electric Light & Power Co. v. City of Baltimore*, 130 Md. 20, 99 A. 968. That case involved offsetting damages for the taking by condemnation of property required for street purposes against benefits to the remaining property from the grading and paving of the street. In dealing with the determination of the amount of the benefits, the court said:

"It would be a very illogical rule which would require damages to be estimated with due regard to all the uses to which the land may be adapted, and would exclude from consideration all but its actual and present use for the purposes of the benefit assessment. The sole object of the inquiry, from either point of view, is to determine the comparative market values of the property before and after the appropriation of a part for the intended public use, and in ascertaining those values, with reference to either period, all the available uses of the land may properly be considered."

See also *Baltimore v. Carroll*, 128 Md. 68, 73, 96 A. 1076; *Brack v. Baltimore*, 125 Md. 378, 93 A. 994 and 128 Md. 430, 97 A. 548; *Bonaparte v. Baltimore*, 131 Md. 80, 101 A. 594; *Callaway v. Hubner*, 99 Md. 529, 535, 58 A. 362; *Pumphrey v. State Roads Commission*, 175 Md. 498, 506, 2 A. 2d 668.

The case of *Md. & Pa. R. R. Co. v. Nice*, 185 Md. 429, 45 A. 2d 109, involved a different state of facts. There the railroad's right of way could not be put to any use the value of which would be enhanced by the paving in question, nor did the paving enhance its value for use as

a railroad right of way. Likewise, in *Baltimore v. Scharf,* 54 Md. 499, and in *United Rwys. & Elec. Co. v. City of Baltimore,* 127 Md. 660, 96 A. 880, it was held that there were and could be no benefits to a street railway company in the repaving of a street upon which the street railway had laid its tracks, and hence that the street railway company could not be assessed for any part of the cost of such repaving. In the *Scharf* case, the assessment of benefits against abutting properties was attacked *inter alia* because . the street railway company had not been assessed for benefits; in the *United Railways case,* conversely, the effort was made to assess the street railway for benefits. (The reconsideration and rescission of the mandate in the *Scharf* case in 54 Md. reported in 56 Md., at page 50, which were based upon the majority opinion in *Baltimore v. Johns Hopkins Hospital,* 56 Md. 1, did not involve this point.) The difference between railroad and street railway rights of way and other property, insofar as special assessments are concerned, was commented on by Judge Delaplaine in the opinion in the *Md. & Pa. R. R. Co.* case; but the Court expressly recognized, as it did in the *United Railways* case, that such a right of way might be subject to a special assessment for improvements, if specially benefited thereby. See also *Louisville & Nashville R. R. Co. v. Barber Asphalt Paving Co.,* 197 U. S. 430, in which the then present use of a railroad lot abutting on a street for railroad right of way did not render a paving assessment invalid as a violation of the Fourteenth Amendment.

The appellant's objection to the application of the front foot rule of assessment on the ground that its land is rural is not, we think, sustainable. It is really a variation of the objection to considering the use of its land for any purpose other than that to which it is presently put, and accordingly is covered by what we have already said.

A more serious problem arises as to whether or not, in view of the fact that the building of the school was

at least the principal reason for paving the street, it is permissible to throw roughly 80% of the cost of the improvement on the owners of abutting land on a front foot basis. As between the owners of the abutting lots or property on the north and south sides of Hayden Drive, we see no valid objection to the use of the front foot method of apportionment of costs. Ordinarily such a method of apportionment is valid, and it has been upheld in numerous cases in this State, among which we may refer to: *Baltimore v. Johns Hopkins Hospital,* 56 Md. 1; *Moale v. Baltimore,* 61 Md. 224; *Baltimore City v. Stewart,* 92 Md. 535, 48 A. 165; *Bassett v. Ocean City,* 118 Md. 114, 84 A. 262; *Leser v. Wagner, supra; Lyon v. Hyattsville,* 125 Md. 306, 93 A. 919; and *Dinneen v. Rider,* 152 Md. 343, 136 A. 754.

The school lot may be described as abutting on the westerly end of Hayden Drive. This slight frontage is not mentioned in the apportionment—possibly because of Section 65-19, paragraph c of the Montgomery County Code exempting from assessment property owned by any "governmental agency" of the State of Maryland. It is not clear, however, just what is meant by a "governmental agency" of the State. If, however, this front footage were included, the effect on the other assessments would be almost negligible, for Hayden Drive is only 26 feet wide, and no point seems to have been made in the trial court of its omission, so that the question is not properly before us.

As the case now comes to us it is practically impossible to tell the basis on which the County absorbed about 20% of the total cost and assessed the bulk of the paving costs on the abutting properties. Reading Section 65-19 and Section 154-12, paragraphs b and c, of the Montgomery County Code together, it seems that whatever costs were absorbed by the County were for items or amounts which were not otherwise assessable against abutting properties.

The two Resolutions and the "ordinance" of the County Council make no reference to the public benefit accruing

from improved access to the new school. Thus the pitfall of such cases as *Baltimore v. Moore*, 6 H. & J. 375, and *Burns v. Baltimore*, 48 Md. 198, is avoided by the County. In those cases the presence of a purpose to benefit the public in general was manifest and special assessments on particular properties were held invalid. The ordinance does definitely find "benefits" in specified amounts to the abutting properties against which the assessments are made. The usual presumption is that a local improvement is for the special benefit of the property assessed. *Bassett v. Ocean City, supra; Baltimore v. Johns Hopkins Hospital, supra; Baltimore v. Hanson*, 61 Md. 462; *Hyattsville v. Smith*, 105 Md. 318, 66 A. 44.

Where the legislature has fixed the assessment, the courts will ordinarily enforce it and the matter is usually considered one for the exercise of legislative discretion. *Bassett v. Ocean City, supra; Lyon v. Hyattsville, supra*. A number of cases, including the *Bassett* case, draw a distinction between cases where the legislative body has determined the assessment and cases where the determination has been made by subordinate officials. If full legislative power in such matters has been conferred upon a municipal corporation, the same rule applies as if the determination had been made by the legislature itself. *Hancock v. City of Muskogee*, 250 U. S. 454.

In the instant case, the power of the County Council to enact the Road Construction Code and the provisions here pertinent of Chapter 65 relating to Roads and Streets are among the enumerated powers conferred under Code (1951), Article 25A, Section 5 (U). The adoption of the Resolutions and of the Ordinance pertaining to Hayden Drive would appear not to be legislative actions within the meaning of the Home Rule Amendment, Article XI-A of the Constitution of Maryland. See *Schneider v. Lansdale*, 191 Md. 317, 61 A. 2d 671. However, the ordinance, so far as appears, was in conformity with a legislative enactment within the field where the County Council supplants the General Assembly as the legislative body for

the County, and the ordinance did not go beyond the limits thereby fixed.

The County Code seems to commit the County firmly to a policy of paying for roads of the type here involved out of assessments on abutting properties made on a front foot basis, and the Council has applied that policy here.

There are numerous general statements to be found to the effect that local benefit assessments must be subject to constitutional limitations. This truism throws little light on the problem and we have found no case in which it has been applied to facts substantially similar to those here before us.

Since the land in question is now suburban in character, and not rural, the area is one in which the front foot rule of measuring benefits can fairly be applied, and the holding in the case *Harlan v. Town of Bel Air*, 178 Md. 260, 13 A. 2d 370, is accordingly not applicable.

Also, since as we have already said, the evidence is sufficient to show that the special benefits to the appellant's property were at least equal to the amount of the assessment against it, and since the Council in making the assessment (so far as appears from the record) proceeded in accordance with the declared legislative policy and direction with regard to paying for paving roads of the type here involved out of assessments against abutting properties made on a front foot basis, we cannot hold that the assessment was unwarranted or that it amounts to a taking of the appellant's property without due process of law. Many cases have pointed out that exact equality in assessments of this type is impossible, and though we might not agree with the apportionment of costs as between general tax funds and assessments against abutting properties, this alone would not warrant us in holding the assessment illegal, or in invading a field considered one for the exercise of legislative discretion.

Accordingly, the decree of the Circuit Court will be affirmed.

*Decree affirmed, with costs.*