## TYLER *v.* BALTIMORE COUNTY, MARYLAND ET AL.

[No. 56 (Adv.), September Term, 1968.]

---

*Decided November 15, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Richard A. Reid,* with whom were *Carroll W. Royston* and *Royston, Mueller, Thomas & McLean* on the brief, for appellant.

*Harris James George, Deputy County Solicitor,* and *Jean G. Rogers, Assistant County Solicitor,* with whom was *R. Bruce Alderman, County Solicitor,* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

Appellant (Tyler) brought an action in the court below against Baltimore County, the Chief of the Baltimore County Department of Public Works, the Baltimore County Health Officer and the Director of Permits and Licenses of Baltimore County praying issuance of the writ of mandamus ordering approval of his application to operate a sanitary landfill and directing issuance of such a permit.

This action grows out of the failure of the appropriate authorities in Baltimore County to process this application until after the institution of this proceeding.

The original application for a refuse disposal permit was submitted by Tyler and a corporation called "Land Reclamation, Inc." Tyler testified that the latter corporation was owned by him, his wife and his children. He further testified that with the approval of Land Reclamation, Inc., the disposal area was to be operated by Refuse Disposal, Inc., a corporation owned by him.

The initial landfill application was filed May 15, 1967. The Maryland State Deparment of Health issued a refuse disposal permit on June 30, 1967. The landfill application was approved by the Baltimore County Office of Planning and Zoning on July 12, 1967, and by the Baltimore County Fire Prevention Bureau on July 20, 1967. The petition for mandamus was filed September 29, 1967, alleging failure to continue processing the application. The Department of Public Works of Baltimore County and the Baltimore County Health Department each on October 26, 1967, disapproved the application. Thereupon an amended petition was filed.

The land involved is located east of North Point Boulevard on Norris Lane and is immediately adjacent to and east of the Philadelphia, Baltimore and Washington Railroad track. Norris Lane intersects North Point Boulevard.

Baltimore County Code (1966 Cumm. Supp.) § 13.35.1 "Regulations governing the storage, collection and disposal of refuse within Baltimore County" provides in pertinent part:

"(a) General Provisions

* * *

"(5) No disposal site shall be established or op-

erated without the approval of, and being subject to the regulations and requirements of, The Baltimore County office of Planning and Zoning, Department of Public Works, Fire Prevention Bureau, Department of Health, and the Maryland State Department of Health.

* * *

"(e) Refuse Disposal

* * *

"(3) *Sanitary landfills*: Any person disposing or contemplating disposal of refuse by burying * * * shall comply with the following general requirements:

* * *

"(H) An all-weather access road, negotiable by loaded collection vehicles, shall be provided to the entrance of the landfill site."

Tyler obtained the approval of all departments except the Baltimore County Department of Health and the Department of Public Works. The Baltimore County Department of Health in refusing the license said:

"The Baltimore County Department of Health is disapproving the application of Robb Tyler to operate a sanitary landfill because he has not obtained a proper refuse disposal permit from the State Department of Health. The permit from the State Department of Health (which has been submitted with the Robb Tyler application) accords permission to Refuse Disposal, Inc., to construct and operate a sanitary landfill; however, the application to Baltimore County makes no mention of Refuse Disposal, Inc., but instead names Robb Tyler as applicant and Land Reclamation, Inc., as lessee.

"As a point of guidance, applicant is informed that, in order to be acceptable to the Baltimore County Health Department, the State Department of Health permit must be issued to all owners of the property on which the landfill is to be operated, as well as to any person or corporation who or which might propose to operate said landfill."

The Department of Public Works based its refusal on the failure of Tyler to enter into a public works agreement as requested. The public works agreement desired would have required Tyler, among other things, to agree to provide improvement of Norris Lane from North Point Boulevard to the railroad by construction "* * * of a 15-inch roadway section with bituminous concrete surface in a 24-foot wide open section with 3-foot shoulders on a 50-foot right-of-way" at the expense of Tyler and to be financially responsible for having the railroad grade crossing signalized, together with all arrangements with the railroad to accomplish the signalization.

The lower court in a carefully reasoned opinion reviewed each of the reasons advanced by the county for not granting the permit. It held the action of the Health Department was not legally justified. It said:

"The local law, which is really in the form of regulations, does not specifically provide that the application shall be signed by all owners of the property, or that it shall also be signed by any and all persons or corporations which might propose to operate the landfill. If the legislative body enacting these regulations deemed it necessary to have the application so signed, it could have made provisions in the act. Of course the County argues because of the various matters of compliance and the penalty provision for violation of any regulation under the act, they should be entitled to have a responsible person sign the application. There may be some merit in this, but if that were so the County law should have provided and made it a requirement in the filing of the application that all owners and all operators should be a party to it. Of course, Doctor Roop, as the Deputy State and County Health Officer, is the approving authority under these regulations."

The lower court concluded that the Health Department's refusal was because of the form in which the application was presented and that the Health Department's action was not legally justified. We agree.

The Board of Public Works' action was predicated on highway comments, storm drain comments, water comments, sanitary sewer comments, general comments and division of land development comments. Interestingly enough, the general comments stated that its Bureau of Sanitation uses only a six inch cover of earth for each day's operation where Tyler was proposing to use eight inches. It is impossible to read those comments and ascertain precisely what was to be expected of the property owner as a condition precedent to the granting of a permit, but it would appear, among other things, that not only was the property owner expected to execute a public works agreement under which he would improve Norris Lane, but it was also expected that he would pay the cost of a re-location of Norris Lane at the time of construction of the Patapsco Expressway.

The lower court rested its denial of the writ of mandamus upon the right of the county to require an access road and the protection of the public in the matter of the railroad crossing although commenting:

"* * * I do not consider that a fifty foot right of way with twenty-four feet of paving was ever contemplated under these regulations in order to provide an all-weather access road."

The general rule is firmly established that the petitioner in a mandamus proceeding must show both a clear legal right to which he is entitled and an imperative duty on the part of the respondent. *Bd. of Co. Comm'rs. v. Oxford Dev. Co.,* 209 Md. 373, 378, 121 A. 2d 239 (1956). It is also a general principle of law that mandamus is not proper to review nonministerial acts of public officials or agents, but this Court has recognized that mandamus will lie to remedy arbitrary abuses of discretion. *State Dep't of Health v. Walker,* 238 Md. 512, 209 A. 2d 555 (1965). Appellee argues the local authority has the power to adopt *ad hoc* regulations. In the latter case we said:

"* * * the Department is bound by its own regulations, just as are applicants for permits, and can not in approving or disapproving applications presented

to it, depart from those regulations and make *ad hoc* decisions." *Id.* at 523.

The record does not disclose whether or not Norris Lane is a public road. It was indicated at the argument that it is a public road from North Point Road to the railroad with some homes abutting thereon.

The proposition that there may be an assessment on an abutting property owner in connection with the improvement of a public road is well recognized. In *Silver Spring Memorial Post No. 2562, V.F.W. v. Montgomery County,* 207 Md. 442, 115 A. 2d 249 (1955) we said:

> "The law is firmly established in Maryland that in order to justify a special assessment for a local improvement such as the paving of a street, there must be both a public purpose and a special benefit to the properties to be assessed over and above that accruing to the public (citing authorities). The difficulty of balancing the necessary public interest and the required special benefits to particular properties has often led to imposing a part of the cost on the community at large through general taxation and a part on properties specially benefited." *Id.* at 448.

We have been cited no authority and we are aware of no authority under which the county could require Tyler to acquire at Tyler's expense a right-of-way for widening a public road and then require him to proceed to improve this public road at his expense to the county's specifications. This is not to be confused with the county's right to place a proportional assessment on him for improvement if he is an abutting property owner.

If Norris Lane at its point of intersection with the Philadelphia, Baltimore and Washington Railroad right-of-way is a public road, then the cost of signalization is misplaced. Code (1966 Repl. Vol.) Art. 23, § 205 provides:

> "Every railroad company organized under this article shall be required to erect at all points where its road shall cross any public road, * * * a sign * * * to give notice of the proximity of the railroad * * *."

Section 227 of Art. 23 provides:

"Whenever the several railroads of this State shall cross any public highway at grade * * * and any such highway shall be believed to be of such a character as to render the passage of locomotives and trains thereon dangerous to life and property, it shall be the duty of the commissioners of the county in which such point of crossing shall be located, to notify the company owning or operating the railroad at such point, * * * that the said county commissioners will * * * consider the necessity of further protection against danger at said crossing; and if * * * said county commissioners * * * shall determine that such protection is necessary, they shall notify said railroad company * * * that * * * said railroad company shall either place a flagman at said crossing, * * * or a system of electric alarm bells, * * *; or shall change the said grade crossing so as to pass said highway with an under or over grade crossing * * *."

If Norris Lane is a public road, then the county's reason for denying the license was not a proper one and, therefore, was arbitrary. Accordingly, we shall remand the case without affirmance or reversal in accordance with Maryland Rule 871 to determine the status of said road. If Norris Lane from the Tyler property to North Point Boulevard is determined to be a private road, then the action of the trial court is proper. If Norris Lane in said area is determined to be a public road, then the writ of mandamus should be issued commanding the issuance of the requested refuse disposal permit.

*Remanded for further proceedings without affirmance or reversal, costs to await the final result.*