484 A.2d 285

Peter G. SULZER and Martin F. Lynott, Trustees

v.

MONTGOMERY COUNTY, Maryland.

No. 66, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Dec. 5, 1984.

638

Joseph A. Lynott, III and Joseph A. Lynott, Sr., Rockville (Lynott & Craven, P.A., Rockville, on brief), for appellants.

Alan M. Wright, Asst. County Atty., Rockville, for Montgomery County (Paul A. McGuckian, County Atty., Robert G. Tobin, Jr., Deputy County Atty., and H. Christopher Malone, Sr. Asst. County Atty., Rockville, on brief), for appellee.

Argued before WEANT, GARRITY, and ALPERT, JJ.

ALPERT, Judge.

Before us is a multi-issue case surrounding the levying of a special assessment against appellants' property which abuts Twinbrook Parkway in Montgomery County. Twinbrook Parkway was constructed by the County and those properties contiguous to the new parkway were specially assessed a portion of the construction costs. Additionally, part of the appellants' tract was condemned to build the parkway.

Appellants' contentions on appeal concern both the validity and amount of the special assessment. Their initial judicial appeal in this matter was to the Circuit Court for Montgomery County (Miller, J., presiding). Judge Miller's Memorandum and Opinion contained the following factual and procedural history of the case:

It was the year 1962. John Fitzgerald Kennedy was President of the United States. The Supreme Court in *Baker v. Carr* paved the way for the reapportionment of state legislatures. Stan Musial was paid the outrageous salary of $65,000 a year just because he could hit a baseball better than about anyone who ever picked up a bat. Roger Maris hit 61 home runs for the New York Yankees, but teammate Mickey Mantle beat him out for Most Valuable Player in the American League. The Green Bay Packers beat the New York Giants in the AFL Championship Game. Lawrence of Arabia won the Academy Award for best picture. Tony Bennett walked away with two Grammy Awards for best song "I Left My Heart in San Francisco" and best male singer. Colonel John Glenn put the U.S. back in the space race and got an

old fashioned ticker tape parade. 1962 was also the year that Twinbrook Parkway Project 1166 was authorized by the County Council for the construction of Twinbrook Parkway thus beginning this saga.

Appellants' predecessor opposed the construction of Twinbrook Parkway, which was to run from Rockville Pike to Viers Mill Road, on the ground that it would substantially damage the property and the property would not benefit from the proposed road. The property in question was then unimproved and contained 12.845 acres, and fronted on Viers Mill Road and Halpine Road. The new road was to run through the middle of the subject property, bisecting it into two almost equal parts.

In October of 1962, the County, in connection with its acquisition of land for the Twinbrook Parkway, obtained an appraisal from W.E. Beers that compensation for that portion of the subject property taken should be $9700.00. Mr. Beers also estimated the special benefits accruing to the remaining property to be $24,000.00. In 1963 John E. Gogarty, on behalf of the appellants, appraised the just compensation for land taken at $25,000.00, but made no appraisal of benefit to the remaining property. In 1964 Mr. Beers revised his assessment of just compensation for the taking of 1.58 acres of the subject property to $20,300.00.

On June 29, 1971, following completion of the project, Resolution No. 7–293 was adopted by the Montgomery County Council setting the final assessments for the project. Since the road bisected the subject property, each side wound up with a frontage on it and each side was assessed front foot benefit charges based upon a predetermined formula. The total amount assessed against abutting property owners was $412,499.01 or 34% of the $1,230,337.68 actual cost of the project. The assessment of front foot benefits was made against the abutting property owners in accordance with the following formula:

'A. Commercial or industrial properties abutting existing paved and maintained portion of the road—$20.00 per assessable foot.

B. Residential properties abutting on existing paved and maintained portion of the road—$10.00 per assessable foot.

C. Properties abutting the realigned portion of Rawlings Avenue—$25.00 per assessable foot.

D. All other properties where the road was to be constructed for the first time—$60.00 per assessable foot.'

The assessment of the front foot benefits against the subject property, based upon paragraph D of the formula, was in the total amount of $92,285.06, $44,539.63 being assessed against Parcel A with a front footage of 729.10 feet and $47,745.43 against Parcel B with a front footage of 906 feet. Appellants appealed this assessment to the Circuit Court (Law No. 34,591).

While this appeal was pending both parties employed appraisers to assess the benefit, if any, that accrued to the property because of the construction of the road. Mr. E.L. Dieudonne, employed on behalf of the appellee, submitted a report on July 28, 1974, stating that the benefit to the property was $37,900.00 and in August he increased the benefit to $45,500.00. Mr. Adolph E. Rohland, employed by the appellants, was of the opinion that the property did not receive any benefit from the road.

On the basis of the Dieudonne appraisal, and upon the joint motion of the parties, the Circuit Court in Law No. 34,591 by order dated December 22, 1978, remanded the case back to the Montgomery County Council for further proceedings to determine what benefit, if any, may have accrued to the subject property by virtue of the construction of Twinbrook Parkway. Upon remand the County Executive, Charles W. Gilchrist, recommended that the Council assess the subject property in accordance with the appraisal of Mr. Dieudonne of the benefit in the

amount of $45,500.00. Appellants were afforded an opportunity to appear before the Council and to submit certain documents for inclusion in the record. The Council accepted the recommendation of the County Executive and, based upon the Dieudonne appraisal, on March 22, 1983, by Resolution No. 10–111 assessed the subject property in the amount of $45,500.00. It is from this assessment that the appellants have taken this appeal.

Judge Miller deferred to the opinion of the County Council, and the expert witness testimony it relied upon, in affirming the special assessment.

> It is not for the Court to substitute its opinion for Mr. Dieudonne's when it has basis in law and fact nor is it for the Court to substitute its judgment for that of the Council in using Mr. Dieudonne's Report as a basis for the assessment in question. It is not for the Court to second guess the Council as to which expert it should have relied upon.

Appellants now appeal Judge Miller's decision to affirm the County Council.

The first set of issues raised by the appellants concerns the factual validity of Mr. Dieudonne's report. Appellants' contentions are threefold, to wit: (1) failing to deduct costs incurred to regrade property to the level of the parkway was error; (2) concluding that the rezoning of the property was attributable to the new parkway was error; and (3) the method employed to calculate appellants' total acreage was erroneous.

### 1. *Cost of Regrading*

Appellants' first contention relates to Mr. Dieudonne's failure to consider the cost of regrading the property to enable ingress and egress onto Twinbrook Parkway in his appraisal of the special assessment. Appellants contend that the construction of Twinbrook Parkway adversely changed the grade differential between their property and the new road, thereby increasing the cost of providing

access to the property. Mr. Dieudonne stated he did not consider this cost because he assumed they had been an element of damages in the condemnation proceeding. Mr. Dieudonne's assumption does have some legal basis:

> *Where part of tract taken.*—The damages to be awarded where land, or any part of it, is taken is the fair market value of the part taken, but not less than the actual value of the part taken *plus any severance or resulting damages to the remaining land* by reason of the taking and of future use by the plaintiff of the part taken. The severance or resulting damages shall be diminished to the extent of the value of the special (particular) benefits to the remainder arising from the plaintiff's future use of the part taken.

Md.Real Prop.Code Ann. § 12–104(b) (1981 Replacement Volume) (emphasis added). The constitutional purpose of this statute is to provide just compensation for any damage to the remainder. *State Roads Commission of the State Highway Administration v. Brannon,* 58 Md.App. 357, 367, 473 A.2d 484 (1984) (citation omitted). "The measure of damages used to achieve this goal in a partial taking is the difference between fair market value of the whole property immediately before the taking and what is left immediately after the taking." *Id.* (citations omitted). Hence, the consequential or resulting damage may reduce the value of the remaining land. *Id.* at 368, 473 A.2d 484. In *Big Pool Holstein Farms, Inc. v. State Roads Commission,* 245 Md. 108, 225 A.2d 283 (1967), the Court of Appeals discussed a condemnation award for a partial taking wherein access to the remaining property was affected. There, a newly constructed roadway bisected the owner's remaining lands and rendered it partially landlocked. The Court observed that "when the partial taking affects the access to the remaining property, evidence as to the cost of subsequently securing adequate access has a direct bearing on the measure of damages and, under our decisions, is admissible in the condemnation proceedings." 245 Md. at 113, 225 A.2d 283. Thus, the jury properly considered the State

Roads Commission's cost in acquiring a right-of-way to the landlocked farmland. It made no difference that evidence of this cost arose after the actual taking, but a few days prior to the trial.

>The evidence as to the availability and cost of the access strip was not rendered inadmissible because the Commission secured the option only a few days before the trial. Evidence of the damage caused by a taking in terms of actual cost may not be available until after the date of the taking.

245 Md. at 116, 225 A.2d 283.

■ Although damages from the partial taking are arguably within the purview of the condemnation statute, the instant facts seem to indicate that such damages could not be calculated at the time of the taking or before the eminent domain proceeding. Once the road was completed, the cost of gaining access could be determined with precision. This appeal, and its relevant facts, now span a period of time exceeding two decades. The condemnation proceedings occurred during the early-to-mid 1960's. Resolution No. 17–293, the first attempt to levy a special assessment against abutting property owners, was introduced and adopted by the Montgomery County Council on June 29, 1971. Disagreements ensued as to its accuracy, leading to its revision in March of 1983. Apparently, the completed roadway was not accessible to the appellant herein because of a difference between the grade of his property and the new road. The County's expert openly admitted that these access costs were not considered in the special assessment because he assumed the costs had been included in the condemnation award. We have reviewed the record, including the various expert reports, and found no evidence of any attempt to calculate the cost of ingress and egress prior to the actual construction of the road.[1] Furthermore, we

---

1. There are statements in the two 1964 reports that no severance damages will occur; however, there is no detailed explanation or conclusions supporting such hypotheses.

find no mention of a proposed grade for the new roadway which would have permitted the experts to predict access costs.

Appellants contend that since these costs were not added to the condemnation award, they should instead be permitted as an offset to their special assessment. Under the facts herein, we agree with appellants' contention.

■ Maryland case law has long recognized that the cost of providing access to a new road should be considered when calculating special assessments.

> In determining whether property adjoining a street to be opened will be benefited, or the amount of benefits, it would be impossible to arrive at a proper conclusion without taking into consideration the cost, if any, of putting the property in such shape as to render it useful after the street is actually opened.

*The Philadelphia, Baltimore & Washington Railroad Co. v. The Mayor & City Council of Baltimore,* 124 Md. 635, 637, 93 A. 146 (1915). Failure to consider the grade of the street when assessing abutting owners was deemed inequitable and unfair by the Court of Appeals in *Mayor & City Council v. Johnson,* 123 Md. 320, 325, 91 A. 156 (1914).[2] The street grade was found to be "materially involved in ascertaining the amount of benefits to be assessed against the abutting lands...." *Id.* The materiality of street grade was explained in *The Mayor and City Council of Baltimore v. Smith v. Schwartz Brick Co.,* 80 Md. 458, 471, 31 A. 423 (1895):[3]

---

**2.** In *Johnson,* the City attempted to assess benefits before the permanent grade was established, *i.e.,* without considering the cost of cutting and filling the contiguous land.

**3.** *See generally* 14 E. McQuillan, *The Law of Municipal Corps.,* § 38.133 (3rd ed. 1970) (cases discussing various types of damages which can be deducted from amount assessed); 70 Am.Jur.2d *Special or Local Assessments,* §§ 22–23 (1973 and Cum.Supp.1984) (general discussion of the extent of special benefits and the determination thereof).

If a lot was worth one thousand dollars before the opening of the street and would be worth two thousand dollars after it was opened, without any work being done on it, the benefit to it would manifestly be one thousand dollars; but if it would cost five hundred dollars to bring it to the grade of the street, so as to give it the value of two thousand dollars, it is equally clear it would really only be benefited five hundred dollars.

Finally, in *Mayor & City Council of Baltimore v. Garrett*, 120 Md. 608, 87 A. 1057 (1913), the issue of regrading land was addressed in a case involving both condemnation damages and a special assessment. Although a specific ordinance applied there, the general equitable precepts are still applicable today. The jury in the *Garrett* case considered the estimated cost of regrading and "included the amount in the award of damages instead of charging it against the benefits." 120 Md. at 612, 87 A. 1057. The Court surmised that this method was utilized by the jury because "the allowance made for the regrading was beyond the amount of the benefits assessed." *Id.* Furthermore, the Court noted the practical similarity between the two methods and stated that "no prejudice has resulted to any interest concerned from the mere fact that the disputed elements of injury were estimated as additions to damages other than as deductions from the benefits...." *Id.* at 613, 87 A. 1057.

 We, too, see little difference as to when the cost of regrading (access costs) is considered. If such damages are reasonably foreseeable at the time of the condemnation award, they certainly should be considered as "severance or resulting damages to the remaining land" at that time. Md.Real Prop.Code Ann. § 12–104(b) (1981 Replacement Volume). *See Big Pool Holstein Farms*, 245 Md. 108, 225 A.2d 283. If, however, access costs *attributable to the taking* cannot be ascertained at the time of the taking, they may later be offset against the landowner's special assessment.

Accordingly, we shall remand this proceeding to the Circuit Court for Montgomery County, with instructions to further remand it to the County Council for the purpose of determining the amount of costs (attributable to the taking) incurred by the appellants to gain access to Twinbrook Parkway. Appellee will have the opportunity to present evidence as to these costs and dispute any evidence entered by appellants.

Although we reverse on the basis stated above, we will nevertheless address the remaining issues to provide further guidance to the County Council.

### 2. *Rezoning*

■ Mr. Dieudonne's report concluded that the rezoning of the property, along with its increased value, was a result of the construction of the Twinbrook Parkway. Appellant disputes the accuracy of this conclusion and its use in the calculation of the special assessment. The property was initially zoned R–R for single family use. The property was rezoned to R–30 for multi-family, low density residential in October of 1963. This rezoning came about after the County resolution authorizing Twinbrook Parkway. In May 1964, the property was further rezoned to R–20, multi-family, medium density.

Appellants cite *Surkovich v. Doub,* 258 Md. 263, 265 A.2d 447 (1970) for the proposition that a contemplated road cannot be the basis for a rezoning classification. In that case, the property owner was attempting to have his zoning changed premised upon the construction of the beltway and an interchange next to his property. The argument posed was that these new highways evidenced a change in the neighborhood, thereby entitling him to a new classification. The Court of Appeals rejected this reasoning because "this very network of highways was laid down on the plan when the zoning map was adopted." 258 Md. at 272–73, 265 A.2d 447. The Court essentially held that the completion of a new roadway, contemplated at the time of the original zoning, was not sufficient to mandate a reclassification.

In the instant case, however, the rezoning was approved and implemented two decades ago and there really is no rezoning issue. Examination of the zoning order indicates that whether the new road was contemplated was not the only consideration. The Planning Board found that there was a sufficient change in character in the neighborhood and further that there was a mistake in the zoning map. Furthermore, the Planning Council did in fact consider the construction of the Twinbrook Parkway as a factor justifying the rezoning. The zoning opinion states "that a difficult topography problem coupled with the new Halpine Road[4] location renders single-family development difficult."

In sum, Mr. Dieudonne did have a factual basis for considering the construction of the parkway as a factor in the rezoning and the increased property value and this conclusion was properly considered.

### 3. *Calculation of Appellants' Acreage*

■ Appellants finally contend that Mr. Dieudonne overcalculated the acreage subject to the special assessment. Appellants made two purchases of land, totalling approximately 1.135 acres, in 1966, and contend these properties were subject to individual assessments. We have found no evidence of this in the record. The purchases were consummated in 1966 and the listing of special assessments was issued in 1971. Neither of the properties purchased in 1966 appear individually on this list. Hence, we find no error in this regard.

## II.

■ The second major issue raised by the appellants is whether their property did indeed receive a special benefit from the construction of the Twinbrook Parkway. Special assessments are permissible on the theory that the property will derive a special benefit. *Maryland & Pennsylvania*

---

**4.** Twinbrook Parkway was referred to as "new Halpine Road" prior to its completion.

*Railroad Co. v. Nice,* 185 Md. 429, 432, 45 A.2d 109 (1945). To justify a special assessment, there must be both a public purpose and a special benefit to the assessed properties. *Silver Spring Memorial Post No. 2562, Veterans of Foreign Wars v. Montgomery County,* 207 Md. 442, 448, 115 A.2d 249 (1954). There is a presumption that local improvements do indeed specially benefit the properties which have been assessed. *Id.* at 452, 115 A.2d 249. Furthermore, there is an additional presumption that the legislative determination is correct. *Murphy v. Montgomery County,* 267 Md. 224, 236, 297 A.2d 249 (1972). We do not believe that the appellants have clearly overcome these dual presumptions and therefore decline to reverse the determination that the appellants were indeed specially benefitted.

 Resolution 4–3322, issued by the County Council on July 24, 1962, stated:

> That the County Council finds that the *public interest* requires the improvement of Twinbrook Parkway and Rollins Avenue, as hereinafter described, and that *the abutting properties will be specially benefited* at least to the extent prescribed by this Resolution.

(emphasis added). This resolution satisfies the two requirements delineated in *Silver Spring Memorial Post No. 2562,* 207 Md. at 448, 115 A.2d 249. Granted, the public at large was benefited by the new parkway; however, the County Council determined that the road was also a benefit to those properties abutting the parkway. In light of the dual benefits accorded, the County Council assessed less than one-half of the project costs against the abutting property owners.[5] The mode of assessment is a legislative question.

---

5. Appellants cite a recent decision of this Court for the proposition that costs cannot be assessed merely because the improvement is contiguous to the taxpayer's property. Appellants' reliance on *Montgomery County v. Schultze,* 57 Md.App. 781, 471 A.2d 1129 (1984) is unwarranted under these facts. *Schultze* held that the enhanced value of adjacent property *alone* is not sufficient to justify special assessments of 100% of the costs. 57 Md.App. at 795, 471 A.2d 1129. Here,

*Montgomery County Council v. Summers,* 274 Md. 110, 115, 332 A.2d 646 (1975). The exercise of this legislative discretion will not be reviewed if the assessments are levied pursuant to a just and definite scheme. *Id.* (citations omitted). The County Council examined various appraisal reports and prepared a formula for assessment. Appellants have not presented any evidence indicating the existence of a mistake in the formula or that it was fraudulent. Accordingly, we see no reasons to overrule the factual determinations and actions of the County Council in this regard. We will, however, remand the case for reconsideration of the cost of regrading, and its impact upon the net special benefit.

AFFIRMED IN PART AND REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEE TO PAY THE COSTS.

---

the County Council apportioned the costs between the abutting property owners and the public tax coffers.