### EDITH HITCH *v.* WILLIAM HALL

[No. 823, September Term, 1978.]

*Decided April 17, 1979.*

The cause was argued before MORTON, MELVIN and LISS, JJ.

*Harry Goldman, Jr.,* with whom were *Theodore Losin* and *DeHaven L. Smith* on the brief, for appellant.

*E. Dale Adkins, III,* with whom were *Anderson, Coe & King* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

This case arises out of a claim for damages by reason of medical malpractice filed in the Baltimore City Court by Edith Hitch, appellant, against the appellee, Dr. William Hall, of Baltimore City, a specialist in obstetrics and gynecology.

The appellant had been a patient of the appellee since 1964. In the summer of 1970, the appellant became pregnant. She consulted Dr. Hall about the performance of an abortion and was scheduled for an abortion by suction dilation and curettage at Lutheran Hospital on August 31, 1970. She was then at the end of her first trimester of pregnancy. Suction D & C is a procedure whereby the contents of the uterus are

evacuated by means of a suction cannula. A cannula is a clear plastic tube which is attached to a vacuum machine. The procedure is done by dilating the cervix (gradually opening the mouth of the uterus by inserting increasingly larger instruments) and then inserting the suction cannula and vacuuming the walls of the uterus. If the patient is pregnant, the products of conception are removed by this process. During the course of the procedure, after the appellee had vacuumed the wall of the uterus, he discovered that some of the products of conception were too large to fit through the suction cannula. Because this tissue had to be removed, he inserted a sponge stick, also called a sponge forceps (a plier type device) into the uterus to remove the debris. On his second attempt, the appellee felt the forceps go deeper than on the first attempt. He realized then that the appellant's uterus had been perforated. When such an eventuality occurs there is danger that one or more of the organs in the peritoneal cavity may be injured by the instrument causing the perforation. Because of this danger, the organs in the peritoneal cavity must be examined. This was done by the performance of an exploratory laparotomy through an abdominal incision. The findings of the laparotomy procedure and the steps taken to correct the condition discovered were issues at the trial. The appellee testified that as soon as the perforation occurred he requested a consultation with Dr. Harold Johnson, a surgeon with whom he had worked in the past. When the appellee was advised that Dr. Johnson was not in the hospital he requested the assistance of the Chief of Surgery, Dr. Pierson Checkett. In the meantime, Dr. Hall examined the bowel, and in addition to finding a tear in the uterus, found abrasions (bruises) in the serosal (outer) layer of the bowel in three places to the front of the perforation site. He ran the bowel (a process whereby the entire twenty-four to twenty-eight feet of bowel are passed between the surgeon's fingers to inspect for tears or interference with the blood supply) and found no other damage. The rent (tear) in the uterus was closed, and when Dr. Checkett arrived, the appellee reported his findings to Dr. Checkett who visually examined the bowel. Both doctors agreed that a serosal repair

of the bowel could be accomplished by Dr. Hall without the necessity of Dr. Checkett scrubbing. After the operation, the patient's abdomen was closed, and she was taken to the recovery room in satisfactory condition. Appellant remained at Lutheran Hospital for eleven days as a result of the operation.

Appellant presented as her principal witness to substantiate the alleged malpractice of the appellee, Dr. Maurice Brown, a practicing physician from the Philadelphia area who was certified in obstetrics and gynecology. He testified that the appellee had violated accepted medical standards by failing to measure the depth of Mrs. Hitch's uterus by not "sounding" the uterus (a procedure employed to measure the depth of the uterus), and by failing to administer immediately prior to the abortion or during the procedure a drug known as pitocin which would have caused the uterus to contract and become more firm. Dr. Brown testified that both of these procedures should have been utilized as they have a tendency to minimize the risk of perforation of the uterus during the performance of the suction D & C. Dr. Brown indicated that it was his opinion that as a result of the appellee's failure to comply with accepted medical standards the appellant became infertile and sterilization was required; and that the appellant developed a permanent bowel problem. Appellee presented three Baltimore area physicians as expert witnesses to refute Dr. Brown's suggestion that the appellee had failed to use accepted medical procedure in the performance of the abortion. After a nine-day trial, the case was submitted to the jury which returned a verdict for the defendant. It is from that judgment that this appeal was filed.

We have accepted the appellee's somewhat simplified version of the issues. The issues are as follows:

I. Did the trial court commit prejudicial error in its instructions to the jury when it:

a. Refused to grant a missing witness instruction;

b. Refused to tell the jury that medical chart

entries, uncontradicted by appellee, were declarations of his partners and binding on him; or

c. Instructed the jury that the mere happening of an accident is not evidence of negligence?

II. Did the trial court commit prejudicial error in granting appellant's motion to strike certain testimony only after a delay during which time she reviewed the testimony in detail?

III. Did the trial court commit prejudicial error in allowing one of the appellant's expert witnesses to be cross-examined about his motives for testifying?

Appellant complains initially that the trial court committed reversible error by instructing her counsel not to comment on the failure of the appellee to call as witnesses his partners, Drs. Randall and Chambers, and Dr. Johnson, who collaborated with the appellee in the treatment of the appellant. That error, she contends, was compounded by the refusal of the trial judge to grant a "missing witness instruction." Appellant cites as authority for her first complaint, *Hoverter v. Director,* 231 Md. 608, 609, 188 A. 2d 696 (1963), where it was said:

In a civil case it is well settled that failure of a party to produce an available witness *who could testify on a material issue,* if not explained, gives rise to an inference that the testimony would be unfavorable, and is a legitimate subject of comment by counsel in argument to the jury. (Citations omitted.) (Emphasis supplied.)

The controlling requirement justifying the argument to the jury is that the available witness must be able to testify on a material issue, and that the testimony must be relevant and material, and not merely corroborative or cumulative. *Jacobson v. Julian,* 246 Md. 549, 229 A. 108 (1967); *Brooks v. Daley,* 242 Md. 185, 218 A. 2d 184 (1966); *Critzer v. Shegogue,* 236 Md. 411, 204 A. 2d 180 (1964). The basic issue

in this case was whether Dr. Hall had failed to treat this patient in accordance with accepted medical standards. There is nothing in the record which indicates that either Dr. Randall or Dr. Chambers had knowledge of what had occurred in the perforation of the appellant's uterus. Neither Dr. Chambers nor Dr. Randall had been present at the time of the performance of the first operation involving the abortion procedure. Neither had any personal knowledge as to whether the patient's uterus had been sounded or whether pitocin had been administered. Neither of the doctors had information, other than what was recorded in the hospital records, as to what procedures were followed after the patient's abdomen was opened. It was the appellee's decision in the preparation and trial of his case as to whether either Dr. Randall or Dr. Chambers should be called to substantiate Dr. Hall's defense that he had acted in accordance with accepted medical standards in his treatment of the appellant. If he had called them certainly their testimony would have been cumulative and would have been subject to attack on the grounds of bias. It would appear to have been sound trial tactics not to have called them in view of their minimal personal knowledge of the pattern of events and in view of the expert testimony available in the appellee's portion of the case. The same result is obvious when one considers the failure to call Dr. Johnson. He was not present at the first operation. Testimony and records were presented to the jury which contained his treatment and operative findings and any testimony from Dr. Johnson personally would have been cumulative and collateral. Finally, all of these witnesses were available to the appellant. If she suspected that the records of these doctors might have revealed information which would have been useful in establishing the negligence of the appellee, then she could have subpoenaed Drs. Chambers, Randall and Johnson and required them to appear as adverse witnesses. As such witnesses, they would have been subject to cross-examination.

Intertwined with appellant's complaint concerning the trial court's restricting appellant's counsel from arguing to the jury the failure to call the doctors as witnesses is the

complaint that the trial court erred in refusing to give a missing witness instruction.

In *Critzer v. Shegogue, supra,* at 420-21, the Court of Appeals said:

> Am. Jur. [20 Am. Jur. *Evidence* Section 183, at 188 (1939)] states the general rule thus: "It is a well-established rule that where relevant evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and he fails to do so, without satisfactory explanation, the jury may draw an inference that such evidence would be unfavorable to him. This rule is uniformly applied by the courts and is an integral part of our jurisprudence." The questions relative thereto arise upon the propriety of the court or counsel remarking upon such a failure, upon the granting by the court of an instruction thereon, or statements relative thereto in appellate decisions. To the general rule, as stated above, there are qualification and limitations. [Citations omitted.] However, we do not deem it desirable to attempt to set forth any precise rule with all of the exceptions thereto, for, in passing upon such exceptions, it is often necessary for the trial judge to take into account all of the attendant facts and circumstances bearing upon the situation presented before him. [Citations omitted.] Each case must be determined upon its own facts and surrounding circumstances.

Upon close examination of the facts in the present case, it is evident that even if we concede, *arguendo,* that Dr. Hall's partners, Dr. Chambers and Dr. Randall, might be said to have been under the control of Dr. Hall because of their personal relationship, the same conclusion cannot, in fairness, be reached with respect to Dr. Johnson, who by every standard of ethical conduct would be required to consider the best interests of Mrs. Hitch as she was his patient. Dr. Johnson, then, cannot be presumed to be under the control

of the appellee even though Dr. Johnson and Dr. Hall had substantial professional contacts in the past. In view of these facts and the indication that the witnesses could at best offer only cumulative or collateral evidence, we believe that the trial court committed no reversible error in refusing the missing witness instruction and restricting appellant's argument to the jury on the failure to produce as witnesses Dr. Randall, Dr. Chambers and Dr. Johnson.

Appellant next asserts that she was harmed by the refusal of the trial court to instruct the jury that the declarations and admissions of Dr. Hall's partners were binding on Dr. Hall. We perceive no such harm. While it may be argued that the law states that an admission or declaration by a partner relative to a matter of partnership concern binds a co-partner, *McBriety v. Phillips*, 180 Md. 569, 26 A. 2d 400 (1942); *Harryman v. Roberts,* 52 Md. 64 (1879), that legal principle has no relevance in the factual posture of this case. The *accuracy* of the notes made by Dr. Randall and Dr. Chambers was never questioned by Dr. Hall, nor, for that matter, was the accuracy an issue in the case. The only note which even remotely has any relevance is the undated notice of transfer between services written by Dr. Randall which listed the reason for transfer as "Intestinal obstruction — resection of portion ileum." Appellant contends that the note means there was a transfer because of an intestinal obstruction and that an anastomosis (resection) must have been done by Dr. Hall on August 31st, the date of the original operation. There is no evidence in the case to suggest Dr. Hall performed such an operation on August 31st, and he specifically denied the fact. Further, a careful examination of the evidence convinces us that the transfer note refers to the transfer to Dr. Johnson who performed the anastomosis on October 7th. Appellant did not call Dr. Randall to explain the time and circumstances under which the transfer note took place but chose, instead, to attempt to draw her own conclusion as to its meaning and date, and to then suggest to the trial court that her version of the circumstances was correct, and that Dr. Hall should be bound by the appellant's interpretation of the meaning of the transfer note. We believe

the trial court was correct in declining to follow the appellant's suggestion as to Dr. Hall being bound by his partner's declaration, as this was not a relevant issue in the case.

Appellant then contends that the trial court erred in its instructions to the jury when it stated several times that the mere happening of the accident or the event complained of does not create any presumption of negligence, but that the burden of proof is upon the plaintiff in that regard. In *Lane v. Calvert*, 215 Md. 457, 462-63, 138 A. 2d 902 (1958), Chief Judge Brune of the Court of Appeals said for the Court: "It is well established by the case law in this State that the mere fact that an unsuccessful result follows medical treatment is not of itself evidence of negligence . . . ."

We see no substantial difference between this statement and the instructions given by the trial judge. We have carefully read the entire instructions given by the court comprising some twenty-four typewritten pages and find no undue emphasis on the court's statements that the mere happening of the accident was not sufficient in and of itself to justify an inference of negligence. To the contrary, we find that Judge Jones painstakingly explained the plaintiff's burden of proof and that which was required to meet that burden of proof by a preponderance of the evidence. We find the instructions to have been eminently fair to both sides and, therefore, find no error.

Appellant complains there was prejudicial error in permitting Dr. Levin, one of the expert witnesses for the appellee, to testify that in his opinion the appellant's infertility could have been due to one of two possible causes: (1) the uterine perforation; or (2) vaginal infections due to repeated sexual activity. Appellant suggests this testimony libeled her by inferring that she had had a venereal disease and degraded the appellant in the eyes of the jury to the detriment of her case. Appellant apparently contends that this testimony suggests that her infertility was caused by "venereal disease" as that term is popularly perceived by a layman. There is absolutely nothing in the record to suggest that appellant had the sexual diseases to which oppobrium

might attach. Dr. Levin indicated she had been treated for a series of vaginal infections of a type not unusual in feminine hygiene. Furthermore, it is, we think, controlling that the record shows that the evidence was produced by the vigorous cross-examination of Dr. Levin by appellant's counsel. Not a single word of the particular evidence came into the record as a result of questioning by Dr. Hall's counsel in direct testimony. Counsel for Mrs. Hitch objected and moved to strike the offending testimony, and the trial court held the motion in abeyance until the motion could be considered. In her final instructions to the jury, Judge Jones said:

> Before I instruct you in this case there are two matters I should explain, two evidentiary matters; one is that I have on motion stricken from the record the portion of Dr. Norman Levin's testimony in which he recounted or stated from various records references to infections from which Mrs. Hitch had been treated and that was in connection with a theory which he had testified to regarding the obstruction of the tubes. That portion, just that portion of his testimony, has been stricken, and I've told you before, you must ignore anything that has been stricken from the record.

Appellant contends that the delay in granting the motion to strike lent new life to the libel of the appellant, and that the motion to strike should have been granted immediately as the repetition of the testimony without any instruction of the jury to disregard it at the time it was given sealed the damage that had already been done.

We find no prejudicial error in the delay in instructing the jury not to consider "that portion" of Dr. Levin's testimony.

Finally, appellant suggests the trial court erred in its rulings regarding the cross-examination of Dr. Brown in striking his reference to a local conspiracy of silence and in refusing appellant's proffer demonstrating a local conspiracy of silence. She contends that the trial court erred in permitting cross-examination of Dr. Brown on whether he was associated with other Philadelphia physicians who

testified in Maryland in malpractice cases, and how they were employed. The Court of Appeals, in *Kantor v. Ash,* 215 Md. 285, 137 A. 2d 661 (1958), said: "[T]his Court has adopted the general rule in American courts that a witness, whether a party to the suit or not, may be cross-examined on such matters and facts as are likely to affect his credibility, test his memory or knowledge, show his relation to the parties or the cause, his bias or the like." (Citations omitted.)

We see no error in the cross-examination permitted, nor do we find any error in the court's refusal to permit appellant's counsel to present evidence of the existence of a conspiracy of silence. We do not understand counsel's complaint of a conspiracy of silence as the services of three local doctors were secured to testify as experts. We think the trial judge wisely exercised her discretion in refusing an in-depth interrogation of the alleged conspiracy of silence in view of the circumstances in this case.

*Judgment affirmed.*
*Costs to be paid by appellant.*