473 A.2d 484

STATE ROADS COMMISSION OF THE STATE HIGHWAY ADMINISTRATION

v.

Larry A. BRANNON, et al.

No. 723, Sept. Term, 1983.

Court of Special Appeals of Maryland.

April 9, 1984.

358

Henry F. Leonnig, Asst. Atty. Gen., Special Counsel, with whom were Stephen H. Sachs, Atty. Gen., and Nolan H. Rogers, Asst. Atty. Gen., Chief Counsel, on brief, for appellant.

Carl Harrison Lehmann, Upper Marlboro, for appellees.

Argued before MOYLAN, BISHOP and BELL, JJ.

BISHOP, Judge.

In this condemnation case, the State Roads Commission of the State Highway Administration appeals a judgment of $23,500.00 entered in favor of the appellees, Larry A. and

Linda L. Brannon, after a jury trial in the Circuit Court for Prince George's County.

Appellant filed in that Court a petition to acquire about one-third of an acre from the appellee's 6⅔ acre residential property. The State needed the property to construct part of a dual lane controlled access highway (relocated Maryland Route 193). When it filed its condemnation petition on July 13, 1981, appellant deposited with the Court $3,114.00, which it deemed the fair market value of the property, including damage, if any, to the remainder. The case was certified to the Board of Property Review of Prince George's County, which, after taking evidence and viewing the property, awarded appellee $3,180.00 for the land taken, plus $10,-000.00 for resulting damage to the remainder.

Dissatisfied with the award, appellant filed a "quick take" condemnation petition on May 5, 1982, in the Circuit Court for Prince George's County. Md. Const., Art. III, § 40B; Md. Transp. Code Ann., § 8–318, et seq. When it filed that petition, appellant deposited $3,114.00 (the same amount set out in the acquisition petition of July 13, 1981, which had been heard before the Board of Property Review) with the Clerk of the Circuit Court. Appellee landowners filed an answer to the petition. A jury returned an inquisition in appellees' favor in the amount set out above. This appeal followed.

The State Roads Commission makes four assignments of error, which we will consider in the following sequence:

1. The lower court erred in permitting Mrs. Brannon to base her claim for damages on a change in the neighborhood and in failing to instruct the jury to disregard such a claim.

2. The lower court erred in failing to instruct the jury to disregard appellees' claim that noise or dust from the road damaged their remaining land.

3. The lower court erred in refusing to permit the rebuttal evidence proffered.

4. The lower court erred in precluding final argument as to the inference to be drawn from the failure of the property owner to call her appraisers.

### I. and II.

### *Just Compensation for Resulting Damage to Remaining Land*

Appellant State Roads Commission suggests that the trial court should have prohibited the jury from considering certain elements in measuring just compensation for damage the road caused to appellees' remaining land.

### A.

At a pretrial hearing on its motion in limine, appellant moved to exclude as a basis for damages to the remainder of appellees' property all evidence or argument about change in the character of the neighborhood—rural to suburban or suburban to urban—resulting from construction and use of the road. In order to clarify what it was appellant was attempting to exclude, the hearing judge (Femia, J.) phrased it in a hypothetical jury instruction:

"Ladies and gentlemen of the jury, moving from rural to suburbia is not compensable; if it's been proven to you that that roadway is causing noise, pollution or whatever, you may compensate for that. You may not compensate merely because it gives the character of the neighborhood a more suburban and urban look than a rural look."

Later, in the hearing, the following exchange occurred:

"THE COURT: . . . What [appellant's counsel] is concerned with is one or another witness is going to be called by the defendant to the witness stand and the question is going to be posited to the witness, 'Now that you are no longer living in bucolic America how do you feel?' That's what he's scared of, that general question coming off. Because he says legally how they feel is not compensable and I tend to agree.

MR. LEHMANN: [Appellees' Counsel] Your Honor, I agree with that."

The court then said:

" . . . I don't think I need to rule at this point in limine then based upon Mr. Lehmann's (appellee's counsel) representations to the Court. I will deny the motion in limine. But, I am going to have to stay wide awake during this trial. I can see that."

The motions judge, however, did not preside at trial. The trial court (Ahalt, J.) permitted Linda Brannon, one of the appellees, to testify that her claim for damages to her property was based, in part, on a change in the neighborhood caused by the construction of the road. Her counsel asked for the reasons that she assigned for the diminished value of her property.

After the Court overruled appellant's objection, she responded:

"In 1976 when Mr. Brannon and I sought out a home of this caliber, it took us a long time to do so. Yes, the house was the main attraction. We had to use a lot of imagination because of the work that was involved. But it was the house and the property, the combination of the two, that sold us on this place. We appreciated the country atmosphere that it had to offer us. At the time our children were very small. The quietness, the environment, the feeling that my children had their freedom in this country atmosphere, and in 1977 when I first learned that this highway was coming through, I was very distraught because of what it was going to do to us. My first reaction was that the quietness would be gone. We would have the noise from the traffic on the road. We would have the litter, the pollution. Just the idea of the closeness of the highway to us, what it was doing to this piece of property was altering it . . . from a country atmosphere. . . ."

After further objection Mrs. Brannon continued:

"The highway was altering this piece of property entirely and we were both very saddened about it. There's nothing we can do about the highway, but I do feel that Mr. Brannon and I should be compensated for the damages that it's causing to our property."

The Court then permitted a bench conference:

"MR. LEONNIG: [Appellant's Attorney]. We argued the question of the change in the setting of the property or so-called—her claim of lack of country or losing country atmosphere before Judge Femia as a preliminary matter and it was my understanding from Judge Femia's ruling as well as Mr. Lehmann's understanding that that would not be proffered in the case, it was not to be proffered in the case. That is not a proper item of damage in a condemnation case. If the property goes from rural to suburban or suburban to rural.

THE COURT: If that is an objection, it is overruled. If it's a motion to strike, it is denied.

MR. LEONNIG: It's a motion to strike.

THE COURT: It is denied."

Appellant later excepted to the trial court's failure to instruct the jury that "a change in the neighborhood is not a compensible [sic] item of damage." The court also refused to deliver appellant's proffered instruction that "under the law of Maryland, no damages are allowable with regard to the normal dust and noise incidental to the construction of a highway or its use." The court explained its refusal to appellant's counsel:

"THE COURT: I don't think there's any evidence to support the giving of that. There's no testimony that's been brought up as to that or even been brought up by any of the parties.

MR. LEONNIG: That's what I'm saying and I think it ought to be taken out of the case.

THE COURT: I don't think it's in the case. So, I didn't give it for that reason.

MR. LEONNIG: I don't think it's in the case either.

THE COURT: All right.

MR. LEONNIG: But we think it ought to be given because we think there will be an argument to that effect. And the other is—

THE COURT: Well, I'll prohibit any argument because there's no evidence in the case concerning construction.

MR. LEONNIG: Or its use.

THE COURT: Or its use.

MR. LEONNIG: I have on the tag end of it or its use.

THE COURT: Well, I think it's [sic] use is relevant to the case.

MR. LEONNIG: I don't think there's any evidence what the noise will be from the highway or what the dust will be."

Appellant argues that the trial court erred in permitting the jury to consider, as elements of damage to the appellees' remaining land, the elements of noise, dust, and possible change in the character of the neighborhood resulting from the road.

### B.

When, as here, the State takes a portion of a landowner's property, it is obligated to provide him just compensation not only for the part taken, but for consequent depreciation to the remaining land. *E.g., Andrews v. City of Greenbelt,* 293 Md. 69, 76–77, 441 A.2d 1064 (1982); *Dodson v. Anne Arundel County,* 294 Md. 490, 494–95, 451 A.2d 317 (1982); *Mont. Co. v. Old Farm Swim Club,* 270 Md. 708, 711–12, 313 A.2d 458 (1974); *Pumphrey v. State Roads Comm'n,* 175 Md. 498, 505, 2 A.2d 668 (1938). U.S. Const. amend. 5; Md. Const. art. III, §§ 40, 40B. *See generally* 4A *Nichols on Eminent Domain,* § 14.03 at 14–62 (Rev. 3d ed. 1981); 27 Am.Jur.2d *Eminent Domain* § 310 at 124 (1966). Compensation is required for damage to the untaken portion because it would be unjust to permit the State to carve out a segment of an owner's land without paying for detriment to

the remainder. 1 L. Orgel, *Valuation Under Eminent Domain* 226 (1953).

This requirement is statutorily enunciated in section 12–104(b) of the Real Property article:

"*Where part of tract taken.*—The damages to be awarded where land, or any part of it, is taken is the fair market value of the part taken, but not less than the actual value of the part taken plus any severance or resulting damages to the remaining land by reason of the taking and of future use by the plaintiff of the part taken. The severance or resulting damages shall be diminished to the extent of the value of the special (particular) benefits to the remainder arising from the plaintiff's future use of the part taken."

*Quoted in Griffith v. Montgomery County,* 57 Md.App. 472 at 479, 470 A.2d 840 (1984).

*Oxon Hill Rec. Club v. Prince George's County,* 281 Md. 105, 107, 375 A.2d 564 (1977). The quoted section rephrased and supplanted former article 33A, section 5(b), which essentially restated the case law as it existed for many years. *State Roads Comm. v. Adams,* 238 Md. 371, 376–77, 209 A.2d 247 (1965); *Duvall v. Potomac Electric,* 234 Md. 42, 45, 197 A.2d 893 (1964); Baker & Altfield, "Maryland's New Condemnation Code," 23 Md.L.Rev. 309, 316 (1963).

The statute should be construed to effectuate the constitutional purpose of providing just compensation for damage to the remainder. *Ridgely v. Baltimore City,* 119 Md. 567, 581, 87 A. 909 (1913). To be just, the total compensation should "put the landowner in as good a pecuniary position as if no taking had occurred." *Dodson v. Anne Arundel County, supra,* 294 Md. at 494, 451 A.2d 317. The measure of damages used to achieve this goal in a partial taking is the difference between fair market value of the whole property immediately before the taking and what is left immediately after the taking. *E.g., Oxon Hill Rec. Club v. Prince George's County, supra,* 281 Md. at 107–08, 375 A.2d 564; *Perkins v. State Roads Comm'n.* 55 Md.App.

639, 645, 465 A.2d 1175 (1983). *Colonial Pipe Line Co. v. Gimbel,* 54 Md.App. 32, 38, 456 A.2d 946 (1983); 5 *Nichols on Eminent Domain,* § 16.101 at 16–5. As the statutory language suggests, the fair market value of the owner's remaining land may depreciate due to future public use of the taken portion—termed "consequential" or "resulting" damage.

■ We are called upon to decide what elements a jury may consider in measuring damage to the fair market value of a remainder resulting from public use of the condemned portion. The remainder's fair market value would be (with some qualifications) the price at which a buyer and seller would willingly and voluntarily agree to convey the land. *Potomac Elec. Power Co. v. Smith,* 37 Md.App. 640, 650–51, 378 A.2d 715 (1977) *quoting* Md.Real Property Code Ann. § 12–105(b) (1981 repl. vol.). Thus, generally speaking, all factors caused by the taking that would render the remaining area less valuable to a buyer should be considered. 4A *Nichols on Eminent Domain,* § 14.07 at 14–179, § 14.08 at 14–187, § 14.03 at 14–63. This presumptively includes all consequential damage from highway use. 5 *Nichols on Eminent Domain,* § 16.101 at 16–10, § 16.101[1].

Appellant State Roads Commission suggests though that this measure of damages should be further qualified to exclude consequential damages that are a normal incident of the public project experienced by the public generally—*e.g.,* aesthetic detriment. This suggested qualification, sometimes termed the "common injury rule" in those jurisdictions that apply it, is described in 4A *Nichols on Eminent Domain,* section 14.08 at 14–225 to –226:

> "[A]lthough it has been said that all factors which would motivate a willing buyer or a willing seller must be considered, this rule has been qualified in actual practice. Thus, it has been held that where the damage complained of is not peculiar to the land of the condemnee, but is, the fact, an injury which he suffers in common with other local landowners, there can be no recovery therefor."

Specifically with respect to partial taking for highway construction, *Nichols* reiterates:

"Certain types of damage caused by the laying out of a highway have been rejected as compensable elements bearing upon the depreciation in value of the remainder area. Thus, where the injury complained of is not peculiar to the tract out of which the land taken was carved, but is, in fact, an injury common to all land in the neighborhood and to the public in general it may not be considered. Increased traffic and the influx of undesirable persons have been rejected on this account."

*Id.* Vol. 5, § 16.101[2] at 16–13. *See, e.g., State v. McMurtrey,* 300 S.W.2d 521, 527 (Mo.1957).

The evident purpose of this rule is to compensate the landowner only for those damages uniquely caused by the public use of his land. In this manner, it seeks to achieve some measure of parity between treatment of those whose lands are partially taken and those whose lands are not. This is explained in 1 L. Orgel *Valuation under Eminent Domain* 254 (1953):

"The attempt of the courts to draw this distinction is due to the fact that, with certain exceptions, an owner of property is not entitled to recover for any diminution in value which it may suffer by virtue of the construction and operation of adjacent public works where no part of his property is deemed to have been 'taken'.[1] It would seem, therefore, to be unfair discrimination to reimburse a property owner for all similar damages done to his property simply because a portion of it, however, small, may have been condemned. Bearing this point in mind, the courts have attempted, some of them more vigorously than others, to distinguish between damages which a particular owner has suffered because a part of his prop-

---

**1.** *Andrews v. City of Greenbelt,* 293 Md. supra, at 76, 441 A.2d 1064. *See Goldstein v. City of Baltimore,* 273 Md. 85, 327 A.2d 770 (1974) (harm from viaduct not compensable); *Baltimore v. Himmelfarb,* 172 Md. 628, 192 A. 595 (1937). *See generally* 26 Am.Jur.2d *Eminent Domain* § 163; 27 Am.Jur.2d *Eminent Domain* § 325 at 149 (1966).

erty has been taken, and damages which this same owner may have suffered along with adjacent property owners because public works, detrimental to the remainder of his property, have been located in the neighborhood. Needless to say, there are great difficulties, both practical and theoretical, in making a distinction between these two types of damages, and courts have differed not only in the manner, but also in the zeal, with which they have attempted to draw it."

To illustrate: In *Dennison v. State,* 22 N.Y.2d 409, 293 N.Y.S.2d 68, 239 N.E.2d 708 (1968), the Dennisons' land before the taking was in a remote wooded area, entirely secluded, quiet and peaceful. This sylvan beauty and privacy were destroyed by construction of a state highway, which cut across their property within about 200 feet of their home. In measuring consequential damage to the remainder, the lower court considered the Dennisons' loss of privacy and seclusion, the loss of view, and traffic noise, lights and odors from the highway. Before the Court of Appeals of New York, the State argued that since an owner whose land adjoins a highway would not be entitled to damages for depreciation from nearby traffic, the Dennison's award for consequential damage should only consist of elements peculiar to their remainder, not traffic noise suffered by the public generally.

The Court affirmed the lower court's inclusion of such aesthetic detriment in the measure of damages, reasoning:

"The courts below did not make a separate award for damages due to noise but rather merely considered it as one factor in determining the decrease in value to the remaining property. As we view the case, it would have been practically impossible for the court to separate the noise element from the other elements which, it is conceded, were properly considered—the loss of privacy, seclusion and view. Any reduction which would be made on remand would be purely arbitrary and at best speculative. How could it be determined which portion of the diminution in value was due to loss of privacy and view and

which portion was due to noise? The State does not suggest an answer but argues steadfastly that such a determination must be made.

This does not answer the question and is clearly contrary to cases in this and other jurisdictions which have recognized that, where there has been a partial taking of property of the kind present here, the noise element may be considered as one of several factors in determining consequential damages (*South Buffalo Ry. Co. v. Kirkover* [176 N.Y. 301, 68 N.E. 366], *supra; Shano v. Fifth Ave. & H St. Bridge Co.,* 189 Pa. 245, 42 A. 128; *Crawford v. Central Nebraska Public Power & Irrigation Dist.,* 154 Neb. 832, 49 N.W.2d 682).

In conclusion, we would note that we are not unmindful of the State's argument that there are certain inconveniences which property owners must endure without monetary compensation if we are to have the advantages of modern means of transportation (*see e.g., Bopp v. State of New York,* 19 N.Y.2d 368, 373, 280 N.Y.S.2d 135, 139, 227 N.E.2d 37, 40). In the instant case and cases of like kind, however, we believe that the practical difficulties attendant upon accepting the State's theory of evaluating damages outweighs any benefit likely to be derived from applying it." *Id.* 293 N.Y.S.2d at 71–72, 239 N.E.2d at 711–712.

The dissent pointed out:

"But traffic noise is heard by everyone within the range of sound; and since it is a consequence that one takes by choosing to live in a country which builds modern highways, with resulting economic and transportation advantages to everyone, damage ought not, as a matter of policy, be allowed in general and unlimited scale for this kind of consequence.

$$* \quad * \quad * \quad * \quad * \quad *$$

It is not easy to support the justice of a distinction between a man from whom a small slice of land is taken for a road who may get damages for future traffic noise

and a man who is just as near the road and suffers every bit as much damage but from whom no land is taken.

The nature of traffic noise destroys the essential element of particular unity of interrelationships between taking and consequence which until now has been a characteristic of this type of damage.

The idyllic beauty of claimants' house, wooded and landscaped property, its exotic shrubs, trees and garden will not be affected more adversely by future traffic noise than many hundreds of people owning property near the Northway from whom there has been no physical taking." *Id.* at 73–74, 239 N.E.2d at 713–714.

Another example of the debate over the elements included in consequential damage is *State Department of Highways v. Garrick,* 242 So.2d 278 (1970) *rev'd.* 260 La. 340, 256 So.2d 111 (1971). In that case, the landowners' rental property was located in a relatively quiet residential area beside a two-lane street that carried light local traffic. The State carved out about 550 square feet of the owner's property to be part of a new four-lane highway, 22½ feet from the owner's dwelling. Defendant's expert testified that the nature of the property had changed:

"It had been suitable for family living, including small children, but due to the heavily increased traffic, noise, dust and hazard at all hours of the day and night, and the proximity of the dwelling, it was no longer suitable for such purposes. . . . In fact, he testified, 'I think the whole neighborhood has been destroyed.'" 242 So.2d at 279.

The intermediate court of appeals held:

"The general rule that loss of market value due to the taking is recoverable is subject to the limitation that such damage must be peculiar to the subject property and not such as are suffered generally by other landowners in the area.

\*     \*     \*     \*     \*     \*

Inasmuch as Mr. Garrick has not shown how his property in this case has been peculiarly damaged by the in-

creased traffic, noise and dust in ways which have not affected other property along the by-pass right-of-way, we find that the trial judge erred in concluding that the damages complained of are compensable as severance damages." 242 So.2d at 280.

In so ruling, the intermediate court relied upon case law involving State projects beside, not on, private land.

The Louisiana Supreme Court reversed in favor of Garrick, the landowner, emphasizing that when part of a private landowner's tract is taken, he is entitled to recompense for use of that part, even if the damage suffered is not peculiar to his tract. It ruled that there was sufficient evidence of damage to Garrick's remainder, as proven by his witness' observations:

"[T]hey saw and counted traffic, heard the noise, felt the vibrations of the heavy trucks and noted the effect on the tenants; they described the change in the character of the neighborhood." 256 So.2d at 115.

The dissenting justice pointed out:

"The majority has made a distinction in the damages that will be paid when there is no taking, and the damages to be paid when there is the slightest partial taking, even though in fact the damages suffered in both instances may be the same in kind and in degree. No attempt has been made to justify the difference in the two situations as a matter of law or of public policy.

\*     \*     \*     \*     \*     \*

For the first time in our jurisprudence, the majority here has summarily included future traffic noises as an item of severance damages. The overwhelming majority view in this country is that this is a non-compensable damage. *Sackman, supra.* The dissent in *Dennison v. New York, supra,* which represents the majority view elsewhere—and probably the continuing majority view in New York because of the divisions and concurrences in that opinion—shows the inherent dangers under the contrary view." *Id.* at 116.

As these cases demonstrate, there is no consensus on what elements should be included in the measure of consequential damages. The common injury rule, which attempts to limit includable elements of damage to the remainder to those uniquely caused by public use of the taken land, admits of three interpretations. One method would include all elements of damage to the remainder resulting from public use of the taken portion of an owner's land, but would exclude all elements of consequential damage from use of abutting lands. 1 L. Orgel, *Valuation Under Eminent Domain* § 56 (1953). A second method termed the "Massachusetts[2] increased proximity rule," would compensate the landowner for all consequential damages that the public use does to his remaining land *in excess of* the damage suffered if the public work had abutted his property. *Id.* § 55. In this case, for example, the appellees would be compensated for incremental aesthetic damage to their remainder caused by its increased proximity of the highway, which ran across the land taken, instead of beside it. A third method, advocated by appellant, would include only those damages that are different in kind, not degree, from those suffered by abutting landowners. Citing out-of-state decisions as persuasive authority, appellant argues that such factors as noise and dust, which are a normal incident of a highway, experienced by the general public, should be categorically excluded from consideration. *See State v. Blobeck Inv. Co.,* 233 Mo.App. 858, 110 S.W.2d 860 (1937); *State v. Stoddard Gin Co.,* 62 S.W.2d 940 (Mo.App.1933); *Dept. of Public Works & Bldgs. v. Bloomer,* 28 Ill.2d 267, 191 N.E.2d 245, 249 (1963). It argues that since section 12–104(b) of the Real Property article provides that "resulting damages shall be diminished

---

**2.** The rule was articulated in *Walker v. Old Colony & N. Ry.,* 103 Mass. 10 (1869). The Supreme Judicial Court of Massachusetts has noted, "Notwithstanding the apparent equity of our increased proximity rule, the rule has attracted almost no following in the Courts of other States." *Roman Catholic Bishop of Springfield v. Com.,* 378 Mass. 381, 392 N.E.2d 829, 831 (1979). For reasons stated later in this opinion, we will similarly decline to follow it. The rule has been abrogated in Massachusetts. Id. 392 N.E.2d at 831–32.

to the extent of the value of the *special (particular)* benefits to the remainder arising from the plaintiff's future use of the part taken," the landowner's entitlement to compensation should be symmetrically limited to special or particular damages resulting from such use.

As our statutory language suggests, however, Maryland does not use this third measure of damages.

■ Section 12–104(b) of the Real Property article mandates recompense for *"any* severance or resulting damage to the remaining land by reason of the taking and of future use by the plaintiff of the part taken." (Emphasis added.) Definition of the term "any" varies depending on the context in which it is used. *See Black's Law Dictionary* 86 (5th ed. 1979). Here, the Legislature's use of the broad, inclusive term "any," for assessment of consequential damages, as contrasted with the narrow, exclusive terms "special (particular)" for assessment of setoffs, does not evince a legislative intent to restrict compensation to particular categories of damage to the remainder.

Appellant's suggested method for excluding entire categories of damage would fall short of the measure of just compensation, *i.e.,* to put the landowner in as good a pecuniary position as if no taking had occurred. *Dodson v. Anne Arundel County, supra,* 294 Md. at 494, 451 A.2d 317. Triers of fact wishing to avoid this unjust prospect of excluding entire categories of damage would be forced to adopt strained distinctions between damage to the remainder and to the general public. *See State ex rel. State H. Comm'n v. Franchise R. Int.,* 577 S.W.2d 925 (Mo.App.1979). In either case, this rule of exclusion would impose an additional, unwarranted obstruction to attainment of just compensation.

■ *Garrick* and *Dennison,* both *supra,* demonstrate that aesthetic damage from highways—such as noise, pollution, and dust—need not be categorically excluded from consequential damages simply because they are a sort of detri-

ment suffered by the public generally. *Accord, e.g., City of Yonkers v. State,* 40 N.Y.2d 408, 386 N.Y.S.2d 865, 353 N.E.2d 829 (1976); *State v. Board of Education of City of Elizabeth,* 116 N.J.Super. 305, 282 A.2d 71 (1971); *State Road Commission v. Rohan,* 26 Utah 2d 202, 487 P.2d 857 (1971). *See generally* Annot., 51 A.L.R.3d 860, § 10 et seq. (1973). 5 *Nichols on Eminent Domain* 16–11 to 16–12 (1981). *Nichols* states:

"[W]here part of a tract is physically appropriated, . . . it matters not that the injury is suffered in common with the general public. The sole test in such case is whether the damage complained of is directly attributable to the taking."

Vol. 4A, § 14.01 at 14–3 to 14–4. *Accord State v. Board of Education of City of Elizabeth, supra,* 116 N.J.Super. at 313–15, 282 A.2d at 76 (1971).

As we have noted, one way to effect this test is to limit recovery to damages from use of the taken portion, only. Another way is to use the "increased proximity" rule. Our statute, Real Prop. section 12–104(b), adopts the first method, modifying the word "any" with the phrase "*by reason of . . . future use by the plaintiff of the part taken.*" (Emphasis added.) An example of this method can be found in *Johnson v. Gas & Electric Co.,* 187 Md. 454, 50 A.2d 918, 170 A.L.R. 709 (1947). In that case the power company, exercising condemnation authority granted by the State, took a right of way across part of Johnson's land for construction of an electrical line. The line was to be placed on transmission towers, three of which were to be placed on Johnson's land. The trial court admitted evidence of consequential damage from the three towers, but excluded evidence of damage resulting from seven other towers, visible from his remaining land, that carried the transmission line across neighboring property. Johnson contended on appeal that the damage from the transmission line was not limited to consideration of those portions placed on his land, since the entire transmission line was a single unit, and that he was entitled to damages from the construction of the proposed

transmission line across the property of others because his property would be damaged by the sight of the transmission line on the neighboring property. The Court of Appeals declared that it had never been presented with this precise contention before, but noted that existing legislation and case law referred only to consequential damages from use of the taken portion of a condemnee's land. *Id.* at 468–70, citing *Realty Improvement Co. v. Consolidated Gas, Elec. Light & Power Co. of Baltimore,* 156 Md. 581, 144 A. 710 (1929); *Pumphrey v. State Roads Commission,* 175 Md. 498, 2 A.2d 668 (1938). The Court relied heavily on *Campbell v. United States,* 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328 (1924). In that case, the government took 1.81 acres of Campbell's land to be part of a 1,300 acre plant site for the production of nitrates. When Campbell sued for compensation, the district court found that the land taken was worth $750.00, and that the taking damaged the remainder $2,250. It also found that the use of lands acquired from others for the same project would damage his remainder $5,000.00. The Supreme Court allowed the first two items, but disallowed the last, stating:

"The damages resulting to the remainder from the taking of a part were separable from those caused by the use to be made of the lands acquired from others. The proposed use of the lands taken from others did not constitute a taking of his property. *Richards v. Washington Terminal Co.,* 233 U.S. 546, 554, 34 S.Ct. 654, 58 L.Ed. 1088, L.R.A. 1915A, 887. Plaintiff had no right to prevent the taking and use of the lands of others; and the exertion by the United States of the power of eminent domain did not deprive him of any right to respect of such lands. And, if the land taken from plaintiff had belonged to another, or if it had not been deemed part and parcel of his estate, he would not have been entitled to anything on account of the diminution in value of his estate. It is only because of the taking of a part of his land that he became entitled to any damages resulting to the rest. In the absence of a taking the provision of the Fifth Amendment

giving just compensation does not apply; and there is no statute applicable in this case that enlarges the constitutional right. If the former private owners had devoted their lands to the identical uses for which they were acquired by the United States or to which they probably will be put, as found by the court, they would not have become liable for the resulting diminution in value of plaintiff's property. The liability of the United States is not greater than would be that of the private users. Plaintiff cites and relies upon *Blesch v. Chicago & Northwestern Railway Co.,* 43 Wis. 183, *C.K. & N. Ry. Co. v. VanCleave,* 52 Kan. 665, 33 P. 472, and *Haggard v. Independent School District,* 113 Iowa 486, 85 N.W. 777, to support his contention that to be entitled to have the damages found to have resulted to the remainder of his estate by the uses made and to be made of the lands acquired from others. In each of these cases, it was impossible separately to ascertain the damages caused to the remainder of the owner's tract by the taking and proposed use of a part of it. In this case, such damages were separately found, and plaintiff does not complain in respect of the amount of that element. We think that plaintiff's contention is not sustained. The rule supported by better reason and the weight of authority is that the just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking. *See Walker v. Old Colony & Newport Ry. Co.,* 103 Mass. 10, 15, 4 Am.Rep. 509; *Lincoln v. Commonwealth,* 164 Mass. 368, 377, 41 N.E. 489; *Adams v. Chicago, Burlington & Northern R. Co.* 39 Minn. 286, 39 N.W. 629, 1 L.R.A. 493, 12 Am.St.Rep. 644; *Keller v. Miller,* 63 Colo. 304, 307, 165 P. 774; *Horton v. Colwyn Bay & Colwyn Urban Council,* [1908] L.R. 1 K.B. 327." *Id.* at 371–72, 45 S.Ct. at 116–17.

After quoting from the above section of the Campbell opinion, the Maryland Court of Appeals in *Johnson* concluded:

"In the instant case, as in the case of *Campbell v. United States of America, supra,* the damages resulting to the remainder of the land not taken were separable from those caused by the use to be made of the land acquired from others, because appellants own witnesses in their testimony were able to separate such alleged damages. We must therefore conclude that the trial judge was correct in refusing the proffered testimony as to the damage caused to the appellants' land by the use of adjoining land of others on which the proposed overhead electric line is to be constructed." *Id.* 187 Md. at 473, 50 A.2d 918.

The Court of Appeals did not further diminish Johnson's consequential damages from public use of *his* land, even though the entire neighborhood was similarly affected, and even though his property would have no doubt suffered some depreciation if the transmission towers had bordered on his land. The *Johnson* holding thus puts the landowner in approximately as good a pecuniary position as if no taking had occurred. *Dodson v. Anne Arundel County, supra.*

■ Thus, the jury in the case *sub judice* should have considered consequential damages from the public use of the condemned land, not abutting lands, if these sources of damage were separable. *Johnson v. Gas & Electric Co., supra;* Annot., 59 A.L.R.3d 488, §§ 3, 4 (1974); 27 Am. Jur.2d *Eminent Domain* § 310 at 127 (1966); 1 Orgel, *Valuation Under Eminent Domain,* § 56 (1953).

*Johnson* and the *Campbell* decision on which it relied, involved separated sources of damage. But when, as here, the public project involves vehicular traffic that moves toward the taken portion of an owner's land, through it, and then away, the attempt to discriminate between the sources of consequential damage may amount to little more than a quixotic "attempt to separate the inseparables." 1 L. Orgel, *Valuation Under Eminent Domain* 263 (1953). *Accord State v. Board of Education of City of Elizabeth,* 282 A.2d at 77; *City of Tampa v. Texas Company,* 107 So.2d 216, 224 (Fla.

App.1958). It may be unrealistic to say that appellants' taken land is "used" only when traffic passes over it. The traffic approaching and departing their land increases the noise, pollution and other aesthetic detriment just as airplanes do when using an airport, or trains do when using a station. *See Blesch v. Railway Co.,* 2 N.W. 113 (Wis.1879); *Chicago, K. & N. Ry. Co. v. VanCleave,* 52 Kan. 665, 33 P. 472 (1893); *Haggard v. Ind. School Dist.,* 113 Iowa 486, 85 N.W. 777, 780 (1901) *cited in* 170 A.L.R. 721, 726 *et seq.*

If damages from the taken portion and abutting lands are inseparable, the *Johnson* decision does not furnish a measure of damages. The increased proximity rule, though precise, suffers from the same difficulty of application that renders the *Johnson* rule inapplicable. That is, if the jury could not separate out those damages uniquely stemming from the use of the taken land, it would be equally confounded by the task of measuring the damages attributable to the increased proximity of the project. *Id.* One could envision the trial court charging the jury to apply the increased proximity rule and then, smiling ingenuously, saying, "I have described the Augean stables. Cleaning them is your job." (Without the Herculean strength.) [3]

■ Perhaps for this reason—ease of application—if no other, the general rule is that when damages are inseparable, the jury may consider consequential damages from the entire project. 5 *Nichols on Eminent Domain* 16–8 (1981); 1 L. Orgel, *Valuation Under Eminent Domain* 258, 266 (1953); 27 Am.Jur.2d Eminent Domain § 310 at 127 n. 10 (1966); Annot., 59 A.L.R.3d § 3[b] at 494, 496 (1974). As the Superior Court of New Jersey said in *State v. Board of Education of City of Elizabeth, supra:*

"Where part of an owner's land is taken for a public improvement such as this, and the part taken constitutes an integral and inseparable part of a single use to which

---

**3.** See E. Hamilton, *Mythology,* § 11 at 164 (Mentor Ed., New American Library 1969).

the land taken and other adjoining land is put, the owner is entitled to recover the full damage to his remaining property due to such public improvement, even though portions of the public improvement are located on land taken from surrounding owners." 282 A.2d at 77.

Federal courts interpreting the Supreme Court's *Campbell* decision, on which the Maryland Court's *Johnson* decision relied, have held that in certain circumstances the property owner can recover consequential damages from the entire project if he can establish that his property was indispensable to the project, that the use put to his taken property was a substantial part of the project, and that the damages were inseparable. *United States v. 15.65 Acres of Land,* 689 F.2d 1329, 1322 (9th Cir.1982); *United States v. Pope and Talbot, Inc.,* 293 F.2d 822, 825 (1961); *cited in Griffith v. Montgomery County, supra* 57 Md.App. 472, at 480, 470 A.2d 840.

It may be objected that this crude measure of damages lacks the precision with which the Massachusetts rule produces parity between owners of abutting land and owners of partially taken land. Precise parity, however, is not essential. Owners of abutting land recover nothing, not because zero compensation is considered just, but because they have not met the threshold constitutional prerequisite of having land taken.[4] It would, therefore, be inappropriate to use them as the standard for determining just compensation of owners whose lands are partially taken. Annot., 59 A.L. R.3d 488, 492–93 (1974).

Also, as the Superior Court of New Jersey observed in *State v. Board of Education of City of Elizabeth, supra:*

"[A] margin of discretion exists for both courts and the legislature in order that they may assure just compensation—each may in this effort prescribe a rule of damages more favorable to the landowner than that which would

---

4. See footnote 1. *PSC v. Highfield Water Co.,* 293 Md. 1, 20, 441 A.2d 1031 (1982).

satisfy the minimum requirement of the Constitution."
282 A.2d at 79.

*See Lore v. Board of Public Works,* 277 Md. 356, 358–59, 354
A.2d 812 (1976).

## C.

■ In sum, the landowner's compensation, in addition to
that awarded for the part taken, includes an award for any
consequential damage to the remainder caused by the taking
and future State use of the part taken. Md. Real Prop.Code
Ann. § 12–104(b) (1981 repl. vol.). Depending on the evi-
dence adduced at trial, the consequential damage caused by
the part of the public project on the condemned portion may
or may not be separable from detriment suffered by the
public generally as a result of the entire project. If separa-
ble, the landowner should be compensated for all damages
done to his remainder by the part of the public project on
the condemned portion. *See Commonwealth Department of
Highways v. Williams,* 487 S.W.2d 290, 59 A.L.R.3d 481, 485
(Ky.1972). If inseparable, the landowner should be compen-
sated for the specific damage done to his remainder by the
entire project. *State v. Board of Education of City of
Elizabeth, supra; Roman Catholic Bishop of Springfield v.
Com., supra,* 392 N.E.2d at 831. *See* Annot., 59 A.L.R.3d
488, 494–96 (1974).

■ Allowable consequential damages to the remain-
der caused by the taking may be based on the same specific
conditions which adversely affect other properties near to or
abutting the public project, but because there were no
takings, these latter property owners would not be entitled
to damages. These specific conditions affecting alike the
remainder and other non-remainder properties and for which
consequential damages are allowable when there is a taking,
must be distinguished from those general conditions created
by the public project affecting the general public and the
community generally for which damages are not allowable
in any event. Includable in the former or specific category
are such conditions as noise, traffic, dust, dirt and pollution;

in the latter, or general category are changes in the general environmental atmosphere such as from rural to suburban, from suburban to rural, or from residential to commercial. *Nichols, supra,* Volume 5, § 16.101[2] at 16–13 and *State v. McMurtrey, supra. Cf. Dennison, supra* (Court of Appeals of New York allowed both specific and general damages).

The trial court in this case allowed the jury to hear evidence of general detriment done to appellees' neighborhood by the highway, some of which evidence would have been relevant had the damages been inseparable. There was no instruction as to the separability of the damages. Understandably, the court did not discriminate in its instruction to the jury between the two standards of compensation. Its general instruction to assess diminution of the remainder's fair market value invited the jury to consider the effects of the entire highway on that property. We will consequently remand for retrial for the purpose of determining whether the damages are separable and thereafter which standard of damage is applicable.

On retrial, the appellees will have the opportunity to present evidence in accordance with this opinion of specific detriment done to their remainder by the roadway. In assessing the extent of the detriment and the separability *vel non* of its sources, the jury may consider such evidence as expert testimony and the appellees' testimony, in addition to its view of the site. *See Bergeman v. State Roads Comm.,* 218 Md. 137, 142–43, 146 A.2d 48 (1958); *City of Baltimore v. Smulyan,* 41 Md.App. 202, 223, 397 A.2d 198 (1979); *Baltimore City v. Megary,* 122 Md. 20, 27–28, 89 A. 331 (1913).

Even though we reverse on the basis stated above, it nonetheless may be useful to answer appellant's remaining questions, to provide future guidance for the trial court.

## III.

### Rebuttal Witnesses

Appellee Mrs. Brannon acknowledged on cross-examination that before she purchased the property, she had

·gone to the Park and Planning Commission, where she saw a map indicating the proposed path of relocated Route 193. She testified that the map showed the path was near but not on her property. She also acknowledged that the new road's taking of a neighbor's property extinguished his existing right of way across her property.

Appellant wished to call two witnesses in rebuttal. One, Mr. Wilkerson of the Park and Planning Commission, brought the Master Plan plat shown to Mrs. Brannon in 1976. Appellant proffered that the plat would show the proposed roadway crossing the property. The trial court excluded this evidence, in the belief that Mrs. Brannon had testified that she could not tell whether the road crossed the property. The second witness, Isabelle Gatewood, was a real estate appraiser who had already testified during the appellant's case in chief. At that time she had been asked about the special or particular benefits to the property resulting from the roadway. The trial court, however, sustained an objection to such testimony, indicating that it would be more appropriate for rebuttal. In rebuttal, appellant proffered that the witness would testify that the extinguishment of the right of way would benefit the property; she would not, however, quantify the value of that benefit. The court excluded this testimony on the ground that it would not aid the jury in assessing damages.

As we said in *Riffey v. Tonder,* 36 Md.App. 633, 645, 375 A.2d 1138 (1977):

> "Basically, rebuttal evidence is any competent evidence which explains, is a direct reply to or a contradiction of material evidence introduced by an accused in a criminal case or by a party in a civil action. *State v. Hepple,* 279 Md. 265, 270, 368 A.2d 445 (1977), *aff'g. Hepple v. State,* 31 Md.App. 525, 358 A.2d 283 (1976); *Mayson v. State,* 238 Md. 283, 289, 208 A.2d 599, 602 (1965); *Lane v. State,* 226 Md. 81, 90, 172 A.2d 400, 404 (1961), *cert. denied,* 368 U.S. 993 [82 S.Ct. 611, 7 L.Ed.2d 529] (1962); 6 Wigmore on Evidence § 1873 (Chadbourn rev. 1976)."

*Accord Thimatariga v. Chambers,* 46 Md.App. 260, 279, 416 A.2d 1326 (1980).

Insofar as Mrs. Brannon denies that the 1976 map showed the proposed roadway crossing the subject property, admission of that map is proper rebuttal. Insofar as she admits extinguishment of the right of way, further testimony as to that fact alone would be needless duplication, not rebuttal.

## IV.

### Closing Argument

Mrs. Brannon testified that her attorney had hired two real estate appraisers, Frederick Lauterbach and Anath Bright, to appraise her land, but that she never saw an appraisal. Neither appraiser testified at trial. In closing argument, appellant attempted to convince the jury that their absence implied that their appraisals were lower than appellees wanted. The trial court sustained appellees' objection to this argument, and instructed the jury, "You are not to consider any absence of witnesses in this case...."

■ Appellant contends that this constitutes an abuse of discretion. The general rule is stated in *Hoverter v. Director,* 231 Md. 608, 609, 188 A.2d 696 (1963):

"In a civil case it is well settled that failure of a party to produce an available witness who could testify on a material issue, if not explained, gives rise to an inference that the testimony would be unfavorable, and is a legitimate subject of comment by counsel in argument to the jury."

*Quoted* in *Hitch v. Hall,* 42 Md.App. 260, 264, 399 A.2d 953 (1979). *See Walston v. Dobbins,* 10 Md.App. 490, 496–97, 271 A.2d 367 (1970). *See generally,* 29 Am.Jur.2d *Evidence* § 180 *et seq.* (1967). This rule is subject to exceptions depending on the facts and circumstances of individual cases. *Critzer v. Shegogue,* 236 Md. 411, 421, 204 A.2d 180 (1964).

"The controlling requirement justifying the argument to the jury is that the available witness must be able to testify on a material issue, and that the testimony must be relevant and material, and not merely corroborative or cumulative. *Jacobson v. Julian,* 246 Md. 549, 229 A.2d 108 (1967); *Brooks v. Daley,* 242 Md. 185, 218 A.2d 184 (1966); *Critzer v. Shegogue,* 236 Md. 411, 204 A.2d 180 (1964)."

*Hitch v. Hall, supra,* 42 Md.App. at 264, 399 A.2d 953.

In this case, appellees asseverate that Mr. Bright never appraised the land, and therefore was unable to testify. This explanation, if still true at retrial, would warrant preclusion of adverse inference from his absence. Appellees state in their brief: "The details of Lauterbach's estimate were furnished the appellant at a Review Board hearing and under discovery, and his opinion of damages, $27,500, was closer to the landowner's estimate than to that of the government." Nonetheless, unless there is some other excuse for this appraiser's absence, opposing counsel may argue that the absence implies a variance between his estimate and the appellees'.

JUDGMENT REVERSED; CASE REMANDED FOR TRIAL NOT INCONSISTENT WITH THIS OPINION.

COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANT AND APPELLEES.